## CHARLESTON.

ETHAN N. ROGERS *v.* OTTO WESTFALL *et al.*

Submitted November 13, 1923.    Decided November 20, 1923.

1.   RELIGIOUS SOCIETIES—*Minister Held not Entitled to Extra Compensation for Services not Implied.*

An ordained minister of the Methodist Episcopal Church who has, for a stipulated salary, accepted a pastorate enjoining upon him the duty of devoting his time and service to the interests of the church, is not entitled to extra compensation for services rendered in the construction of a parsonage to be used as a residence for the minister in charge. (p. 81).

2.   WORK AND LABOR—*Promise to Pay for Gratuitous Services not Implied.*

No promise to pay for services gratuitously rendered can be implied.    (p. 81).

Appeal from Circuit Court, Harrison County.

Suit by Ethan N. Rogers against Otto Westfall and others. From a decree for defendants, plaintiff appeals.

*Affirmed.*

*Cornelius C. Davis,* and *F. O. Sutton,* for appellant.

*Strother & McDonald, Steptoe & Johnson* and *Leo. P. Caulfield,* for appellees.

LITZ, JUDGE:

The plaintiff appeals from a final decree entered by the circuit court of Harrison County, January 22, 1923, denying his claim of $1363.75 against the defendants, Otto Westfall, B. F. Linville, Ellsworth Fittro, Jesse Rector and John Cork, as trustees of the parsonage property belonging to the Wolf Summit circuit (in Harrison County) of the Methodist Episcopal Church, on account of alleged services rendered by him in the erection of a parsonage building while serving as the regularly appointed and salaried minister of the church on that circuit.

On or about the 1st day of October, 1920, the plaintiff, an ordained minister of the Methodist Episcopal Church, was, by its West Virginia conference in annual session, appointed for a term of one year at a stipulated salary to the pastorate of the Wolf Summit charge or circuit of the church, in Harrison County, composed of five appointments known as the Davisson's Run Church, Wolf Summit Church, Mount Hope Church, Sardis Church, and Coburn's Creek Church. The church then owned a two story parsonage building, of seven or eight rooms, in the town of Wolf Summit used as a residence for the minister on the charge. It had been purchased two years previously for $2600.00, of which $1500.00 or $1600.00 remained unpaid. But being dissatisfied with this house, even after its improvement for his occupancy, the plaintiff prevailed upon the trustees and quarterly conference to sell it and build a new one; representing to them that he was a carpenter and practical builder and could, by managing and assisting in the work, erect a new building of tile walls with stucco and pebble finish at a cost of $2700.00. After assuring the trustees and district superintendent of the church that he would contribute his services and limit the cost to that amount, the plaintiff was permitted to proceed with the construction of the house he had planned. He began the work April 20th, 1921. In the latter part of June, upon complaint by some of the trustees and other church members that the plaintiff was involving the church in serious debt, the district superintendent found that he had already con-

tracted obligations amounting to $4700.00 in executing his building scheme. Whereupon the superintendent directed plaintiff to cease operations and use his efforts in raising funds to relieve the church's financial embarrassment. This he promised to do. However, after the superintendent had returned to his home in a distant community the plaintiff, ignoring his promise, undertook to continue the work until the first of August, when, after incurring an indebtedness of $5500.00 or $5600.00, without completing the work, he presented to the quarterly conference of the district a bill for his alleged services on the job, which, with one day's wage in October, he now swears reasonably to be worth $1363.75. He claims to have performed these services between April 20th and August 1st, 1921, a period of a little more than three months.

What is the basis of this unusual demand? The plaintiff admits that he had no expectation, at the beginning of the work, of receiving compensation other than his salary as minister in charge; but claims that by reason of others failing to contribute as they should have done he changed his mind a month or more later, and so advised the trustees, who stated, in response, that he "ought to be paid". The trustees deny that they knew of plaintiff's intention to assert any claim until the latter part of July or first of August, about the time he quit work; and further deny that they in any manner agreed to recompense him. It seems that when the financial needs of the undertaking became pressing the plaintiff secured the personal indorsement of the trustees for a loan of about $950.00; and upon being denied their individual endorsements for a second loan he became emphatic, declaring that he was through with the whole matter. The unpleasantness of this incident evidently aggravated the situation. So the plaintiff thereafter, on the 18th of October, 1921, filed in the county court clerk's office of Harrison county a notice of mechanic's lien on the building for his alleged services amounting to $1363.75, and on January 24, 1921, brought this suit for the purpose of having the property sold to satisfy the claim.

We are firmly convinced that the trustees and district superintendent, in their testimony, have fairly and accurately presented the facts, and that plaintiff's demand is prompted by afterthought.

Counsel urge recognition of plaintiff's claim upon the theory of an implied promise to pay for beneficial services. We are compelled to deny the application of the principal in this case for two reasons:

(1) It is shown that the plaintiff in accepting the appointment under which he was serving as minister took upon himself the obligation of devoting his time and efforts to the interests of the church. He became by virtue of his office ex-officio chairman of the building committee or committees for the circuit, and whatever service he chose to render in this department of the work fell within the scope of his engagement, for which he was to receive a stated salary.

(2) No promise to pay for services gratutiously rendered can be implied.

The church finds itself in an embarrassing situation as a result of plaintiff's bad judgment and misguided action in creating against it an unauthorized indebtedness and precipitating this litigation for the enforcement of the same. After applying the proceeds from the sale of the old parsonage and the contributions obtained, there remains on the new parsonage, outside of plaintiff's claim, an indebtedness reported in this case of over $4200.00 for the payment of which a sale of the property has been ordered by the circuit court.

We, therefore, affirm the decree of the circuit court.

*Affirmed.*