# CHARLESTON.

J. A. CAMPBELL v. KING'S DAUGHTERS GENERAL HOSPITAL.

Submitted May 13, 1924.   Decided May 20, 1924.

1. CORPORATIONS—*Generally, Director Not Entitled to Compensation for Services, Unless Such Intention Fairly Implied.*

   As a general rule, in the absence of an express contract, a director in a corporation will not be entitled to compensation for services rendered the corporation, unless they were rendered under such circumstances as to raise a fair presumption that the parties intended and understood that they were to be paid for.   (p. 543).

2. WORK AND LABOR—*Promise to Pay for Services Gratuitously Rendered Not Implied.*

   No promise to pay for services gratuitously rendered can be implied.   (p. 543).

3.  APPEAL AND ERROR—*On Reversal for Insufficiency of Bill,
    Cause Dismissed, When no Better Case Possible.*

Where plaintiff's bill is insufficient, and the proof shows
that he is not entitled to relief upon his claim even if it
were properly pleaded, this court, on reversing the decree
in his favor, will dismiss his bill, when it is clear that no
better case can be made.  (p. 544).

Appeal from Circuit Court, Raleigh County.

Suit by J. A. Campbell against the King's Daughters General Hospital.  From a decree for plaintiff, defendant appeals.

*Decree reversed, and suit dismissed.*

*W. H. File,* for appellant.

*Ben H. Ashworth,* for appellee.

MILLER, JUDGE:

Plaintiff filed his bill praying that defendant be restrained from selling at public auction, pursuant to section 29 of chapter 53 of the Code, thirty shares of its capital stock for which he had subscribed, and that the defendant be required to issue to him the stock in question, alleging that he had paid for the same.

The bill alleges that plaintiff subscribed for the stock, of the par value of $1,500.00, at the time the corporation was organized; that he had furnished to defendant furniture and other hospital supplies, amounting to $224.99, and had paid for materials and labor at its request the sum of $818.40; and that he was entitled to credit for "Services rendered the said Corporation as chairman of the building committee of Stockholders and as active manager in the construction of said building from July 20, 1921, to May 13, 1922, including expenses incurred in performing said duties, Four Hundred Sixty ($460.00) Dollars."

By its answer defendant denied that plaintiff was ever designated as chairman of the building committee, or that he was requested to act for defendant in the capacity of manager in the construction of its building; that he was selected as one of a committee of three to confer with the architects in the drawing of plans for the building, and to receive bids

from contractors, subject to the approval of the board of directors; and that plaintiff had volunteered to serve on said committee in consideration that when the building was completed, he should be permitted to take his patients thereto for treatment by him. The lower court decreed plaintiff the relief prayed for.

From the evidence it appears that plaintiff together with four other physicians entered into an agreement with the local circle of King's Daughters for the institution of a hospital at Beckley, West Virginia. The reason given for the organization of the hospital jointly by the local physicians and the King's Daughters, was that the latter were desirous of building a hospital, and there being only one hospital then operated in Beckley, to which only the physicians in control were permitted to take and treat patients, the new institution would enable other physicians to have a place for the proper treatment of their patients. It seems to have been fully understood by all interested that the physicians were to have no compensation for their services in the organization of the company and the building of the hospital other than the privileges above named. It appears that the new hospital was to be open to all physicians and their patients, though there is some conflict in the evidence as to whether this policy was strictly adhered to.

By the original agreement the King's Daughters were to be represented on the board of directors by eight of the fifteen members; other members of the board were plaintiff, Dr. W. W. Hume, Dr. K. M. Jarrell and Dr. J. H. Hoskins. Mrs. Sarah D. McCreery, at that time president of the local King's Daughters circle, was elected president of the board of directors, and had served as president continuously until the time of the trial of this suit  Temporary quarters were secured, in which the hospital work was conducted until the new building was completed. In January 1921, a building committee to superintend the construction of the new building was selected by the board of directors from among its members, composed of Drs. Campbell, Hoskins and Jarrell. In May, 1922, Dr. Campbell, the plaintiff, tendered his resignation as a member of the board and of the building committee, and associated himself with the Beckley Hospital. At this

time plaintiff had been credited on his stock subscription with the amount of the first two items named in his bill in this suit, together amounting to $1,043.41. At a meeting of the board of directors, held August 16, 1923, a resolution was adopted, requiring Dr. Campbell to pay up the balance of his subscription, $456.59, within thirty days, in default of which the stock was to be sold at public auction, pursuant to the Code. Notice of this action of the board was served upon plaintiff.

Plaintiff insists that he is entitled to compensation for services rendered by him as a member of the building committe and as active manager in the construction of the hospital building. From the evidence it appears that he was active in the superintendence of the erection of the building, and probably acted as chairman of the building committee; but it appears that Dr. Jarrell also was active in that regard. If plaintiff assumed the active management of the construction of the building, he must have done so on his own initiative, for there is no evidence showing that the board of directors or the corporation gave him such authority. He had no express contract to manage the construction of the building. All the members of the board who testified on the subject say that it was the understanding of all that the physicians were to render their services free of charge, in the construction work, as well as in the organization of the corporation and the placing of the stock therein. Plaintiff's own evidence on this question is: ''I said my services would be free to the King's Daughters as long as they controlled; that I expected to render a statement to them for services rendered, and if they wanted to issue me stock, I expected to give it back to them.'' It appears that about the time the new building was occupied, a Dr. Wheeler, who afterwards secured a majority of the stock, was brought to Beckley and made chief of staff and general manager of the hospital. Later, the board of directors was reduced from fifteen to seven members; but it does not appear what representation the King's Daughters now have on the board. It does appear, however, that they constituted a majority of the board for eight months after plaintiff severed his connection with the institution. Plain-

tiff seems to have made no demand for compensation until the bringing of this suit, in August, 1923.

As a general rule, in the absence of an express contract, a director in a corporation will not be entitled to compensation for services rendered unless they were rendered under such circumstances as to raise a fair presumption that the parties intended and understood that they were to be paid for. 14a C. J. 136-139; 3 Cook on Corporations, §657; 4 Fletcher on Private Corporations, §2739; Note L. R. A. 1917F. p. 319. From the facts in evidence we are of opinion that there was no understanding that plaintiff was to have compensation for his services in connection with the construction of the hospital building.

*In Rogers* v. *Westfall,* 95 W. Va. 78, 120 S. E. 191, where this court said that it was apparent that plaintiff's demand was prompted by afterthought, it was held that: "No promise to pay for services gratuitously rendered can be implied." In 3, Page on Contracts, (2nd ed.), §1446, it is said: "If A renders services for B, and A does not intend at the time of their rendition to make any charge therefor, and B knows of such intention, A can not subsequently, upon changing his mind, recover for such services as upon an implied contract, even if such work was done with B's knowledge or at B's request." Bishop on Contracts, (1887 ed.) §§220, 222. Plaintiff testified that while he was serving on the committee, he felt that he was rendering service to the King's Daughters Circle or the King's Daughters. Now he seeks to charge the corporation with his services. His own evidence proves that he had no intention to ask the hospital company for compensation. How could he render service to one party and demand payment from another?

It is insisted by defendant that its demurrer to the bill should have been sustained, and that it was error in the lower court not to do so. We are of opinion that the demurrer should have been sustained. The bill does not allege that the services were rendered at the request of defendant, or with its knowledge; nor that he had been employed by anyone. The only allegation is that the demand was for services rendered the corporation as chairman of the building

committee and as active manager in the construction of the building, including expenses in performing said duties.

This court, on reversing a decree for insufficiency of the bill, in a cause in which a good case is disclosed by the evidence, or where it appears that plaintiff may on another hearing make out a good case, will remand the cause with leave to plaintiff to amend his bill. *Toothman* v. *Courtney*, 62 W. Va. 167. But here we have decided that plaintiff has not made out a case entitling him to the relief prayed for, and that he could not do so on another hearing. The cause was fully heard on plaintiff's theory of his demand, and submitted to the court for decision. It would not serve him any good purpose to permit him to amend his bill. If his bill had properly stated the facts constituting his claim, the decision would have been the same.

The decree will be reversed and the plaintiff's suit dismissed.

*Decree reversed, and suit dismissed.*