MARY G. DRAKE *et als. v.* ANNA M. O'BRIEN *et als.*

(C. C. No. 350)

Submitted May 5, 1925.   Decided September 8, 1925.

1.   JUDGMENT—*Fact Judicially Passed on Cannot be Subsequently Adjudicated Between Same Parties.*

Where any fact has been judicially passed upon it is res adjudicata, no matter what the nature of it, and cannot be subsequently adjudicated between the same parties. (p. 588).

2.   ESTOPPEL—*Where Party With Full Knowledge of Right and Material Circumstances Advisedly so Acts as to Recognize Transaction, There is Acquiescence, and Transaction Becomes Unimpeachable.*

Where a party with full knowledge of his right and all material circumstances, freely and advisedly does anything which amounts to a recognition of a transaction, or acts for a considerable length of time in a manner inconsistent with its repudiation, there is acquiescence; and the transaction, although originally impeachable, may thereby become unimpeachable in equity.   (p. 583).

3.   POWERS—*Power Coupled With Interest is Created by Deed Vesting Title to Subject of Agency in Grantee in Such Manner That He May Execute Power in His Own Name.*

A power coupled with an interest is created by a deed which vests the title to the subject of the agency in the grantee in such a manner that he may execute the power in his own name.   (p. 589).

4.   SAME—*Power Coupled With Interest is Not Revoked by Death of Grantor.*

Such a power is not revoked by the death of the grantor. (p. 591).

5.   SAME—*If Grantee of Power Coupled With Interest Has Discretion as to Manner and Method of Executing It, Law is Satisfied With Substantial Compliance With Terms Thereof, and Equity, in Absence of Fraud, Rarely Interferes.*

Where the grantee of a power coupled with an interest is vested with a discretion as to the manner and method of executing the same, the law is satisfied with a substantial compliance with the terms of said power, and a court of equity, in the absence of fraud, very rarely interferes. (p. 591).

6.   MINES AND MINERS—*Mining Partnership Exists Between Tenants in Common Working Mine Together and Dividing Profits; Ownership of Shares or Interest in Mine is Es-*

*sential Element, But Mere Profit Sharing Does not Create Such Partnership; Mining Partnership Held not to Arise Between Grantor and Grantees of Deed Conveying Undivided Interest in Mineral and Timber Lands With Right to Grantees to Operate Property for .Mineral and Timber Products.*

A mining partnership exists between tenants in common of a mine who work it together and divide the profits in the proportion of their several interests. Ownership of shares or interests in the mine is an essential element of a mining partnership. Mere profit sharing, however, will not create a mining partnership. No such partnership arises between the grantor and grantees in a deed, where the owner of mineral and timber lands, conveys an undivided interest therein to others, together with the right and power to said grantees to operate the entire property for mineral and timber products, and to account to the grantor for a certain portion of the net proceeds or profits arising from said operations. (p. 592).

7. FRAUDS, STATUTE OF—MORTGAGES—TENANCY IN COMMON—*Bill to Have Deed Absolute Adjudged Mortgage Held Barred by Laches in View of Lapse of Time; Tenant in Common of Oil Properties May Make Valid Parol Lease Thereof; Party in Possession of Oil Producing Property Conducting Operations Thereon Presumed Parol Lessee Where no Evidence of Lease; Parol Lease of Oil Properties, Together With Possession and Royalty Payments, Creates Valid Year to Year Tenancy Requiring Statutory Termination.*

Points 2, 3, 4 and 5 of the syllabus *Drake* v. *O'Brien*, 83 W. Va. 678, approved and applied. (p. 592).

Case Certified from Circuit Court, Wood County.

Bill by Mary G. Drake and others against Anna M. O'Brien and others. Demurrer to the amended bill, for want of equity was sustained, and the ruling certified.

*Decree affirmed.*

*William Beard*, for plaintiffs.
*W. H. Wolfe*, for defendants.

WOODS, JUDGE:

This cause comes here on certificate. The sufficiency of the amended bill is challenged by demurrer, the court below finding no equity in the pleading. This cause has been here before. *Drake* v. *O'Brien*, 83 W. Va. 678. The facts on which

the litigation is founded are thus stated there by the Court with perspicuity:

"This appeal seeks review of three decrees entered, respectively, March 19, 1914, April 6, 1917, and March 28, 1918. The last one awarding the plaintiffs a right of accounting for oil, coal and timber taken from a tract of land containing about 1,000 acres, throughout a period of more than thirty years, upon a basis determined by it, as well as partially by the preceding decrees, may be deemed to have settled the principles of the cause. Whether the first one did is questioned by a cross-assignment of error.

"The primary claim of a right to an accounting depends upon the legal effect of two deeds dated, respectively, June 26, 1875, and April 4, 1877, and purporting to convey undivided interests in said tract, both of which the plaintiffs charge in their bill to have been mortgages. This contention, as well as the claim to a right to an accounting upon the facts alleged, was rejected by said first decree; but the court, being of the opinion that the plaintiffs might be able to show themselves to be entitled to an accounting, granted them leave to amend their bill. Both plaintiffs and defendants complain of that decree, the former, because it held the deeds to be absolute, and the latter, because it did not preserve their alleged right to operate the entire tract of land for coal, oil, gas and timber, under the terms of the deeds purporting to confer such rights.

"The deed of June 26, 1875, executed by Edmund L. Gale and Mary Gale, his wife, to James M. Stephenson, Thompson Leach, W. Vrooman, C. H. Shattuck and H. H. Moss, after reciting the existence of a deed of trust on the lands in question, to secure the payment of ten $5,000.00 notes held by William Cady, payment of four of them, default as to one and partial default as to another, making past-due indebtedness of $8,146.56, conveyed to the parties of the second part an undivided one-half interest in and to at least one thousand acres of a tract containing about 2,000 acres, situated in Wood and Ritchie Counties, for and in consideration of said sum of $8,146.56 and covenants therein contained, authorizing the grantees to take immediate and exclusive control of said 1,-

000 acres and all personal property thereon and operate the same as to them should seem best; to collect all rents and profits then due or thereafter to become due to the parties of the first part; to cut timber from said land or mine for coal, oil, salt or other mineral products; all to the end that the grantees might make as much money as possible out of the land and pay out of the rents and profits, (1) all necessary expenses of operation; (2) themselves the $8,146.56 paid by them to Cady; and (3) the remaining notes held by Cady. They bound themselves to pay the Cady debt out of the rents and profits, if sufficient, but not otherwise. But their right to operate the entire tract was not to terminate with reimbursement for their out-lay and payment of the Cady debt. It was to continue indefinitely and the net proceeds or profits of operation were to be divided equally between them and the grantors. The deed expressly provided that they should continue to have the entire and exclusive control of the entire 1,000 acres, and to work and manage it for any purpose and in any manner they should see fit; and gave them sole and exclusive right to grant leases on the land for mining coal, oil and other minerals, or for cutting timber; provided that no leases should be granted for a royalty less than one-fourth of the production nor any existing royalties reduced below one-fourth without the consent of the grantors. Gale was then the owner of oil wells on the tract and he was required to pay a one-fourth royalty out of the production of his wells.

"By the deed of April 4, 1877, the same grantors conveyed to the same grantees an additional undivided one-eighth of the same tract of land, for and in consideration of $5,000.00 and a re-affirmation of the grant made to them by the former deed and all of the covenants and provisions thereof. This deed expressly stipulated that, after full payment of the Cady debt, the grantees were to account to the grantors for only three-eights of the net income from the property. By a deed dated, Sept. 24, 1877, the Gales conveyed to George Loomis an undivided one-thirty-second of the tract, in consideration of the sum of $1,250.00. This deed recited the two former deeds and stipulated that Loomis should hold the interest conveyed to him in the same manner to all intents and purposes, as the grantees in said deeds held theirs.

"The grantees in the first two deeds, holding twenty-thirty-seconds of the land and operating it for oil, conducted the business under the name and style of the Wood County Petroleum Company. The Cady debt was paid off and his deed of trust released, Dec. 12, 1877, and thereafter, the Wood County Petroleum Company received from the operations one-fourth of the gross production from the oil wells and paid to the Gales and others their *pro-rata* shares of such one-fourth, as and for their shares of the net profits. Mary Gale, the original owner of the tract, died many years ago. She, until her death, and those deriving their interests from her, after her death, accepted the payments so made, without objection or complaint, until a comparatively short time before the institution of this suit in 1913. The uniform practice of the Wood County Petroleum Company was to make a distribution of the royalties received, when and as often as they amounted to $1,200.00 or more. When the land was taken over by it, the operations were conducted by strangers to the deeds, under leases yielding one-fourth royalties, except in the case of the Gale wells which paid an equivalent share of the production, under provisions of the deeds. But the manner of conducting the business underwent a change about the year 1890, when Shattuck sold and conveyed his interest to one Dennis O'Brien who had since 1885, acted as the agent of the Wood County Petroleum Company, in charge of the property. At or before that time, some of the leases had been abandoned and O'Brien took charge of the wells on them and operated them himself, without having taken leases on the territory. He paid one-fourth of the production to the Wood County Petroleum Company of which he was a member. Gradually other leases were abandoned by their owners or bought out by him, and he finally became the sole operator on the greater part of the land. In the meantime, he purchased, at different dates, the interests of Leach, Vrooman and Moss, and also additional interests from the Gales, but not all of them. He died in 1910, since which date, his widow, Anna M. O'Brien, as administratrix with his will annexed, has continued the operations upon the land. The Loomis and Stephenson interests were not acquired by O'Brien and he carried on the work with the assent of the representatives of the estates

of Loomis and Stephenson, paying them, as well as the owners of the unacquired Gale interests, their shares of the one-fourth of the production, through the Wood County Petroleum Company''.

Upon this state of facts the plaintiffs prayed that the deeds be held to be mortgages and that they be entitled to a redemption of one-half of the land; that they have sale of the land and a division of the proceeds among the parties according to their respective interests; that there be an accounting for the rents, issues and profits according to the rights of the parties; that the defendants be enjoined against committing further waste by producing oil, mining coal and cutting timber; and for a receiver of said trust to operate the land, pending determination of the rights of the parties. This Court held: ''A bill to have a deed absolute on its face adjudged to be in fact a mortgage, filed by descendants and successors of the grantors, more than thirty years after payment of the alleged mortgage debt and after the deaths of all the parties thereto, the plaintiffs and their ancestors having been out of possession of the property during all of such period and silent as to the character of the deed, and the question of its true character being dependent largely upon oral evidence, is barred by laches.

''A tenant in common of oil producing property, having authority from his cotenant to lease it for oil production, without limitation except as to the amount of royalties to be reserved, conferred upon him by the deed of his cotenant, conveying to him his interest in the land, may make a valid parol lease thereof for such purpose, within the limitations prescribed by law.

''One who has been in possession of the property under such authority and conducting operations thereon for many years and accounting for the royalties to the owners, is presumed, in the absence of evidence of a lease by deed, to be a parol lessee, or such status is legally inferable from the facts and circumstances.

''Though such a lease is not valid as one for a term of more than five years, by reason of the inhibition of the statute of frauds, it together with possession thereunder and payment of the royalties, for many years, creates at least a valid

tenancy from year to year, terminable, if at all, only by statutory notice and barring any relief by injunction and receivership, until extinguished in some way''.

As neither the bill or amended bill contained any specific prayer for partition of the land, the assignment of error predicated on the lack of provision therefor in the decree of the lower court was held to be not well founded, and no opinion was expressed as to this by this court.

The amended pleading certified here is a re-presentation of this cause. The vital facts are unchanged. The plaintiffs stress the entries from the books of account of Stephenson, agent for the Wood County Petroleum Company, as newly discovered evidence, tending to uphold the theory of the plaintiffs as to the deeds of 1875 and 1877. Even admitting that these entries have probative value in determining the original intention of the Gale deeds, it is destroyed by the construction placed upon the instruments by the actions of the parties thereunder for a long period of time. The theory of the present amended bill is that the interpretation of the deeds under which J. M. Stephenson, et al., took charge of the property established an agency. The aforesaid entries on the books of J. M. Stephenson, in which were kept the account of receipts from the Gale lands, and their application to the payment of the Cady trust debt, are offered as evidence of such agency; that the operations and management of the said lands by the said Wood County Petroleum Company were in pursuance of such agency and not ,as absolute owners as was determined in the opinion of the Supreme Court; that such agency was revoked by the death of Mary Gale on August 5, 1885; and that all subsequent operations of said lands by said Wood County Petroleum Company and Dennis O'Brien, as its agents, were limited and determined by the relationship of the parties and not by the terms of agency which were revoked by the death of Mary Gale. If there is no agency, then the whole structure of the bill falls. It will be seen that the present cause is built upon the same contracts upon which the former cause was constructed. Only a different construction is placed upon them by the amended bill. This court in the former suit held that said

deeds were not mortgages. This conclusion will not be permitted to be overthrown here. "Where any fact has been directly in issue and judicially passed upon it is res adjudicata, no matter what the nature of it, and cannot be subsequently adjudicated". 21 Ency. Law, (1st Ed.) 252. The maxim that there must be an end to litigation was dictated by wisdom and sanctified by age. *Warwick* v. *Underwood*, 3 Head (Tenn.) 283; 75 Am. Dec. 767.

On the former hearing the defendants contended that the deeds created in the grantees a power coupled with an interest. The plaintiffs contended then, as now, that they were mortgages or an agency. The expression "a power coupled with an interest" was early defined by Chief Justice Marshall in *Hunt* v. *Rousmanier*, 8 Wheat. 204, as follows: "The power must be ingrafted on an estate in the thing. The words * * * seem to import this meaning. 'A power coupled with an interest', is a power which accompanies or is connected with an interest. The power and the interest are united in the same person." By the phrase "coupled with an interest" is not meant an interest in the exercise of the power, but an interest in the property on which the power is to operate. *Taylor* v. *Burns*, 203 U. S. 120; *Crowe* v. *Trickey*, 204 U. S. 228; *Walker* v. *Walker*, 125 U. S. 339. The language employed in the Gale deeds aptly fits this definition. By the deed of June 26, 1875, there was conveyed to the grantees a one-half undivided interest in 1,000 acres of land. Not only that, but the deed gave the power to take, operate and control the entire tract as their own for the production of oil, timber, coal and salt; with power to lease the same in their own names, as owners of the entirety. Thus the grantees had an interest in every stick of timber, bushel of coal and barrel of oil under the 1,000 acres. A certain portion of the net proceeds was to be paid to the grantors. This power was to continue until the Cady debt was paid. By the deed of April 4, 1877, the power was continued, on the same terms, indefinitely. Under the circumstances here, the deeds of 1875 and 1877 are to be construed as one instrument. *French* v. *Townes*, 10 Grat. 513. "It is competent to consider the acts of the parties, in order to remove doubt as to the construction of the words in a power." *Leroy* v. *Beard*, 8 How. 451; 12 Law Ed. 1151;

*Mechanic's Bank* v. *Bank,* 5 Wheat. 326; 5 Law Ed. 138. It has been said that special powers are to be construed strictly. But it is also a rule of equal potency that the object of the parties is always to be kept in view, and where the language will permit, that the construction should be adopted which will carry out, instead of defeat, the purpose of the appointment. In other words, the power is to be construed liberally in favor of the object to be accomplished. If it is ambiguous, the rule is that injurious consequences should fall on the principal, for not employing better terms. And although a grant of powers is sometimes to be construed strictly, yet it would not seem fit to fritter it away by nice metaphysical distinctions, when the tenor of the whole instrument is in favor of what was done under the power, and when the grantor has reaped the benefit of it, as in the instant case, for a long period of time. As much strictness is not required as there would be if the power were a naked one, and not coupled with an interest. *Taylor* v. *Benham,* 5 How. 233. Terms and modes prescribed in settlements for the execution of powers should be followed in reason and substance, so as to insure the purposes and objects contemplated by such settlements, and so as to prevent them from being sacrificed to mere literal severity of construction. *Ladd* v. *Ladd,* 8 How. 10, 12 Law Ed. 967. Applying the foregoing legal principles to the cause under consideration the theory of the present amended pleading that the Gale deeds established an agency in the grantees, and that all the operations and management of said lands by the said grantees were in pursuance thereof, falls.

Is this power revocable? "It is well established rule of common law that the death of the principal puts an end to an agency, when the authority is not coupled with an interest." Am. & Eng. Ency. Law (2nd Ed), page 1022. It is irrevocable when the agency or power is coupled with an interest in the thing itself or the estate which is its subject. *Angle* v. *Marshall,* 55 W. Va. 671. Where the power is coupled with an interest, so that it may be exercised in the name and as the act of the donee of the power, the death of the person who conferred the power has no effect upon it. *Sulphur Mines* v. *Thompson,* 93 Va. 293. In Perry on Trusts,

Sec. 602h, the author says: "It is a universal rule that a power coupled with an interest is irrevocable. ** ** ** Not even the death or the insanity of the grantor or donor will annul or suspend its exercise. ** ** ** In other words, the power is annexed to the property, and is an irrevocable part of the security, and goes with it". If the power be coupled with an interest, it survives the person giving it, and it may be executed after his death. *Hunt* v. *Rousmanier,* 8 Wheat. 174, 5 Law Ed. 589. Being, instead of an agency, a power coupled with an interest, the death of Mary Gale would in no wise affect it. Where a power is coupled with an interest the law is satisfied with a substantial compliance with the terms of. the power. *Rowe* v. *Beckett,* 30 Ind. 154; *Rowe* v. *Lewis,* 30 Ind. 163. The amended bill contains no sufficient charges of maladministration of the power to authorize intervention of a court of equity.

However, whatever name may be given to the estate created by the Gale deeds in reference to the exclusive rights to possession and operation of their reserved portion of the fee, the compensation which the grantees are to pay necessarily is rent or royalty. There is no relationship of trustee or cestui qui trust. The power is not a power in trust. The power created by the Gale deeds for the purpose of effecting the operation and development of the property is one coupled with an interest, and in effect the provisions of this power amount to a grant or lease for mining purposes. The provision of the deed referred to is: "When the whole of the said Cady debt shall have been paid the said parties of the second part are still to continue to have the entire and exclusive control of the said one thousand acres, or the tract hereby conveyed, as well the undivided one half belonging to the said parties of the first part as their own, and to work and manage the said property for any purpose and in any manner the said parties of the first part may see fit, and to account to the said parties of the first part for one half of the net proceeds thereof after the payment of the Cady debt". It will be seen that the aforesaid provision of the deed vests in the grantees the right to work and manage the property themselves, and when they so elect. As to the compensation to be paid they are within

the last paragraph of the deed in relation to compensation, that is: "It being the intention of the parties that all persons whatsoever owning or working wells on said territory shall pay royalty thereon".

This view of the cause defeats the purpose of the amended bill. It seeks to dissolve a mining partnership. The mining partnership is dependent upon the fact that there was an agency between the Gales and Stephenson and others, which was revoked by the death of Mary Gale, and since that time the terms of agency being destroyed the relationship of the parties interested in the mining property in the operation thereof in fact made them mining partners. If mining partners, under the authority of *Childers* v. *Neely,* 47 W. Va. 70 upon proper grounds a dissolution may be invoked by one partner.

A mining partnership exists between the tenants in common of a mine who work it together and divide the profits in proportion to their several interests. Ownership of shares and interests in the mine is an essential element of a mining partnership. The relation does not exist between the owners of a mine and one, who under a contract with them, works a mine for a share in the profits or proceeds. Mere profit sharing will not create a mining partnership. *Blackmarr* v. *Williamson,* 57 W. Va. 249. Hence the plaintiffs here do not sustain the position of mining partners to the defendants and are not entitled to sue for dissolution.

The doctrine of laches also operated as a bar to the construction sought to be placed on the Gale deeds by the plaintiffs. *Drake* v. *O'Brien, supra.* Where a party with full knowledge of his right and all material circumstances, freely and advisedly does anything which amounts to recognition of a transaction, or acts for a considerable length of time in a manner inconsistent with its repudiation, there is acquiescence; and the transaction, although originally impeachable, becomes unimpeachable in equity. *Champ* v. *County Court,* 72 W. Va. 475; *Mann* v. *Peck,* 45 W. Va. 18. Again *Despard* v. *Despard,* 53 W. Va. 443, which holds that acquiescence in a transaction may bar a party of relief in a very short period. Where one has knowledge of an act, or it is done with his

full approbation, he cannot undo what has been done; and if he stands by and sees another dealing with his property inconsistent with his right, and makes no objection, he cannot afterward have relief. Where his silence permitted or encouraged others to part with their money or property, he cannot complain that his interests are affected. His silence is acquiescence, and estops him. A court of equity will not assist one who has slept on his rights and shows no excuse for his laches in asserting them. *Trader* v. *Jarvis,* 23 W. Va. 100; *Holsberry* v. *Harris,* 56 W. Va. 320. In *Badger* v. *Badger,* 2 Wall. 87, 17 Law Ed. 836, it is held that the party who makes such appeal should set forth in his bill specifically what were the impediments to an earlier prosecution of his claim; and how and when he first came to a knowledge of the matters alleged in the bill. This doctrine is approved in *Harper* v. *Combs,* 61 W. Va. 561. How long can the plaintiffs sleep and simply say they were asleep? Neither the bill nor the amended bill in this cause comes up to the demand that an explanation must be given of the prolonged delay; they do not state any impediments to the earlier prosecution of their claim. This is essential according to the authorities. *Holsberry* v. *Harris, supra; Newman* v. *Newman,* 60 W. Va. 371. Mary Gale lived ten years after the Cady debt was extinguished, yet she made no claim to the deeds having been merely mortgages. Laches alone is sufficient to bar equitable relief, especially when it has been so long continued as to render the relief sought doubtful, uncertain, unfair or unjust. *Snyder* v. *Charleston,* 65 W. Va. 1; *Depue* v. *Miller,* 65 W. Va. 120.

The O'Brien management of the property was attacked in the former appeal. A like attack is made here. In the former adjudication the court held, he being in possession of the property under the authority of his co-tenant and conducting operations thereon for many years and accounting for the royalties to the owners, is presumed, in the absence of a lease by deed, to be a parol lessee, and that relief by injunction and receivership was barred, until such lease was extinguished in some way. The amended bill avers that since the former appeal it has been discovered that O'Brien in fact was acting under a written lease. This lease exhibited with the amended bill only relates to about nine acres of the 1,000 acres in

controversy. Why the belated proffer of it? It appears to have been duly recorded, soon after its execution in 1886, in the county in which the lands affected are situated. We do not see that the cause of the plaintiffs is in anywise strengthened by the discovery of this lease. While charges of maladministration against O'Brien and Mrs. O'Brien are averred in the amended bill, the evidence introduced by the plaintiffs in the former record shows the futility of proving them. The plaintiffs might have had some ground of complaint concerning the terms of the O'Brien lease, if it had been seasonably made. Equity will not permit such complaint to be made at this late day. Such was the gist of the former decision of this Court on the former appeal.

No sufficient ground for the appointment of a receiver has been established. The Gale deeds vested the power of sole and exclusive management and control in the grantees and expressly deprived the grantors of any voice therein. The grantors are entitled only to participation in the net proceeds arising from the development of the property for minerals. As we have stated, the plaintiffs do not sustain a position toward the defendants of mining partners. A dissolution of a mining partnership cannot therefore be had under the amended bill. A receiver will not be appointed to take charge of an enterprise unless it appears that the same shall be dissolved. This principle is clearly announced in *McMahon* v. *McClernan*, 10 W. Va. 419. The court there said: "The appointment of a receiver, when directed, is made for the benefit, and on the behalf of all the parties in interest, and not for the benefit of the plaintiff or of one defendant only. 2 Story's Eq. Juris., Sec. 829". It has decided that the court will not upon motion, appoint a receiver unless it appears that the plaintiff will be entitled to dissolution on a hearing.

Ordinarily where the evidence discloses that a case can be made on proper pleadings, a cause will be remanded with leave to the plaintiff to amend his bill. *Toothman* v. *Courtney*, 62 W. Va. 167. But the evidence taken on the matters brought before this Court on the former appeal discloses no such cause here. The cause there was heard on the plaintiffs' theory of their demand, and submitted to the court for

decision. The alleged new evidence has already been adverted to. Instead of this new evidence being decisive of the cause, it is contradicted and rendered nugatory by the construction placed upon the Gale deeds by the actions of the parties to the transaction. Newly discovered evidence which is of such doubtful character as only to open up the cause for further litigation will not sustain even a bill of review. *Brown* v. *Nutter,* 54 W. Va. 82. Conceding the language of the Gale deeds to be of doubtful import or ambiguous, though it seems clear enough to us as far as it goes to define the relation of the parties to each other, yet where the parties by their acts and conduct concur in its construction and interpretation, courts regard and give effect to their exposition, when to do so would not violate the rules of law or infringe upon public policy. *Clark* v. *Sayers,* 55 W. Va. 512. This is an often repeated and well established canon of construction.

The case made in the amended bill is merely a re-arrangement of the facts presented in the former bill. The pleader frankly states that the object of the amendment "is to more clearly set forth the plaintiffs' claim for relief, set up in said bills, and to explain the meaning of the allegations thereof". We have seen that the plaintiffs are in no position to invoke a dissolution of a mining partnership as prayed for in the amended bill. It would not serve any good purpose to permit plaintiffs to amend their bill. Had the bill before this Court before stated the facts constituting their claim as here, the decision would have been the same. *Campbell* v. *King's Daughter's Hospital,* 96 W. Va. 539, 123 S. E. 396. Where a power coupled with a discretion has been exercised, a court of equity, in the absence of fraud, very rarely interferes. *Markey* v. *Langley,* 92 U. S. 142, 23 Law Ed. 701.

It follows from the principles and conclusions hereinbefore stated that the demurrer to the amended and supplemental bill was properly sustained by the circuit court. Its action is affirmed, and we so certify.

*Decree affirmed.*