# Wytheville

## KINCHELOE AND OTHERS v. GIBSON'S EXECUTRIX.

### June 12; 1913.

### Absent, Keith, P.

1. TAXATION—*Taxes Accrue February First—Who to Pay.*—Taxes accrue and become personal charges against the owners of real estate as of the first day of February of each year, and where the owner dies subsequent to that date the taxes for that year become a preferred charge against his estate.

2. WILLS—*Benefit to Life Tenants—Remaindermen.*—Where a testator has charged his whole estate with the payment of his debts, and provided for a sale thereof for that purpose, and directed the order in which the property is to be sold, and subject to these provisions has given his property to one set of persons for life and to another in remainder, intending that the life tenants shall have the possession and enjoy any incidental benefits arising from the use of the property until a sale is necessary, the remaindermen cannot complain of such benefits derived by the life tenants, but take their estate *cum onere.*

3. LIFE ESTATES—*Interest on Encumbrances—Who to Pay—General Rule—Exceptions.*—As a general rule, a tenant for life of property subject to incumbrances must keep down the interest accruing on such encumbrances during the continuance of his estate, but the doctrine is qualified where, as in the case in judgment, there is a general charge of all of testator's debts on his real estate, in the event the personal property proves insufficient to pay them. In such case the general doctrine does not apply. Here the life tenant ought not to be disturbed until a change of possession is made necessary in fulfilment of the charge imposed on this property by the will, or until mismanagement thereof or misapplication of its profits, render it improper that he should hold the possession any longer.

4. LIFE ESTATES—*Insurance on Buildings—Case in Judgment.*—Whether a court of equity can, in any case, impose upon a life tenant the burden of insuring buildings on real estate for the benefit of the remaindermen is unnecessary to decide in this case, as the situation of the testator's property in the case at bar does not warrant such a requirment of the life tenant.

Appeal from a decree of the Circuit Court of Fauquier county. Decree for the complainant. Defendants appeal.

*Amended and Affirmed.*

The opinion states the case.

*Keith & Richards,* for the appellants.

*Moore, Barbour, Keith & McCandlish* and *J. Stuart White,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

The appeal taken in this case is from two decrees of the circuit court of Fauquier county entered in the chancery cause pending in said court under the style of *Gibson's Executrix* v. *Gibson, et als,* the one entered on the 27th day of July, 1909, and the other on the 31st day of January, 1911, which chancery cause involved the construction of the last will and testament of Gilbert B. Gibson, a lawyer, late of Fauquier county, and a settlement of his estate.

The said testator died in the early part of the year 1907, and his will, bearing the date of December 18, 1906, was admitted to probate March 27, 1907, and Nellie R. Gibson, a sister of the testator, qualified as the sole executrix thereof, her sister, the other executrix named, declining to qualify as such. Said testator, at the date of his will and at his death, appeared to own considerable personal estate and several parcels of real estate, but was largely indebted, both primarily and as surety for others.

By his will the testator purposed to bestow his bounty, consisting of the personal and real estate owned by him, upon his collateral kin, but charged both his personal and

real estate ultimately with the payment of his debts, endeavoring to designate the order in which the same should, if found to be necessary, be subjected to sale for that purpose. The first clause of the will devised a certain portion of testator's farm called Sunnyside, containing 170 acres, more or less, to his brothers, Joseph A. and Douglas Gibson, in trust for the sole and separate use of his sisters, Mary J., Margaret V., Fannie B. and Nellie R. Gibson, during their lives, with power to each to dispose absolutely by deed or will of one-eleventh part of said land, to take effect at the death of the last surviving of the four sisters. The remaining seven-elevenths of this tract of land the testator devised, by the second clause of his will, after the death of his said sisters, in equal shares to his other brothers and sisters named, and their descendants; but it appears in the record, in regard to this particular tract of land, that by deed executed by said testator bearing date December 24, 1883, though only found among the papers of one of the deceased's grantees after his death and after the institution of this suit, the said testator, Gilbert B. Gibson, had conveyed this land (Sunnyside) to John M. Gibson, Joseph A. Gibson and Douglas Gibson, as trustees, for the sole and separate use of the four sisters of the testator named in the first clause of his will, and Louisa Gibson, who died before the testator; and it further appears that throughout his life the testator managed this farm for the benefit of these sisters and accounted to them regularly for the rents, issues and profits thereof, and that there stood on his ledger an account showing a balance due by him at the time of his death to these four sisters of $517.64 arising from his operations of the Sunnyside farm during the year preceding his death, which indebtedness the executrix of his will paid to the sisters out of the assets of the testator's estate.

The third and fourth clauses of the will have no material

bearing upon the controversy here. By the fifth clause the said four sisters of the testator are devised, during their lives, the residue of Sunnyside farm and the testator's land bought of Lucius, known as the Briar Patch, containing 230 acres, more or less, and "the residue of my personal property;" and further, "if my personal property other than that I have bequeathed specifically be not sufficient to pay my debts, the Lucius tract must be the first land to be sold for that purpose."

The sixth clause of the will provides that upon the death of testator's sisters, Mary J. and Nellie R. Gibson, the specific personal property willed them by the fouth clause, consisting of his household and kitchen furniture as well as testator's residence and adjacent land, should go to his niece, Anna W. Kincheloe, for her life, and upon her death to go to her daughter, Ada Kincheloe, with certain other provisions for the disposition of this property in the event that the said Ada Kincheloe should die without issue.

By the seventh clause of the will it is provided that upon the death of the four said sisters of the testator his seventy-five acre tract of land, being the residue of Sunnyside, *"or any part of same or proceeds thereof if sold,* after the payment of my debts, *that may remain,"* should go to his grand-nephew, J. Gibson Kincheloe, and grand-nieces, Orra Mason Kincheloe and Ada Kincheloe, and any children that might be born to James M. Kincheloe and Anna W. Kincheloe." This residue of Sunnyside, containing about seventy-five acres, together with other real estate of the testator, was at the time of his death subject to a specific lien, evidenced by deed of trust, to secure the payment of the sum of $3,552, spoken of in this record as the Eliza N. Gibson dower fund; and by the same (seventh) clause, the testator provided that upon the death of his said four sisters "I give and devise the Lucius tract, containing 230 acres, more or less, or any part thereof or pro-

ceeds thereof if sold, that may remain after the payment of my debts" to certain nieces and nephews therein mentioned.

The eighth clause of the will is, "I devise to my grand-nephew, J. Gibson Kincheloe, my vacant lot in Upperville, Va., on which the house thereon was burned and my ground rent of nine dollars a year on T. S. Dunbar's lot with wheelwright and blacksmith shop thereon. My personal property bequeathed under the fifth (5) clause of this will, if not exhausted in the payment of my debts, or such as may remain, if any, after the payment of my debts, I give absolutely to my sisters, Mary J., Margaret V., Fannie E. and Nellie R. Gibson;" and the ninth or last clause of the will is, "The personal property in the fifth clause of this will is to be first applied to the payment of my debts, if not sufficient to pay all, then the Lucius land is to be sold for that purpose and if the proceeds of sale are not sufficient, then the seventy-five acres of land or thereabouts referred to in said fifth clause is to be sold for that purpose."

It will thus be seen that the testator's four named sisters were by his will made life tenants practically of his whole real estate; his dwelling in the town of Upperville, with lot attached thereto; 170 acres, a portion of Sunnyside farm; 230 acres, the Lucius tract; seventy-five acres, the residue of Sunnyside; and two lots of twenty-five and five acres; a total of over 500 acres of land; and also testator's personal property, with remainder, after the death of the last surviving of the four sisters, over to certain other persons named, including J. Gibson Kincheloe, Orra Mason Kincheloe and Ada Kincheloe, nephew and nieces of the testator, and any other children that might be born to James M. Kincheloe and Anna W. Kincheloe, who were to take the remainder after the said life estate in the seventy-five acres, residue of the Sunnyside tract; but this, as well as the testator's other real estate and his personal

property, was charged with the payment of his debts and was to be sold for that purpose, if found necessary, in certain specified order, the said seventy-five acres to be the last sold.

The real estate devised by the will was taken charge of by the devises thereof for life, and after the estate had been managed and administered for practically two years from her qualification, the executrix of the will, in February, 1909, filed the bill in this cause, the object of which was to have the direction of the court in the further administration of the estate and the *ex parte* accounts settled by her as executrix and filed, approved and confirmed by the court in this cause, filing with her bill the last of her said accounts as the basis of this suit.

Upon the cause being matured for hearing, the court referred it to a master commissioner to state and settle the accounts of the executrix, the fourth clause of this decree of reference specifically directing the master to state and settle the accounts of the executrix commencing from the date of her qualification up to and including the second year of her administration which was in effect to require a restatement of the *ex parte* account of the executrix covering that period, settled and returned to court of date February 10, 1909; and in response to said decree of reference Commissioner G. L. Fletcher, on June 5, 1909, filed his report. This report and the accounts returned therewith showed that the testator's estate, after paying the expenses of administration and the current accounts, still had outstanding against it an indebtedness of $15,-492.00, and that there was in the hands of the executrix applicable to the payment of said indebtedness only the sum of $6,179.49, thus leaving an indebtedness against the estate of about $9,000 over and above the assets in the hands of the executrix, and under the control of the court in this cause.

To this report the infant defendants, J. Gibson Kinche-

loe, Orra Mason Kincheloe and Ada Kincheloe, by their
guardian *ad litem,* filed certain exceptions, which made
the contention that the commissioner in stating the ac-
counts erroneously charged against the estate all of the
interest accrued and accruing on all the indebtedness of
the estate remaining unpaid, taxes, running expenses, etc.,
and gave all the income from the estate—rents, issues and
profits—to the life tenants; and that the interest on said
indebtedness and taxes alone for the years 1907, 1908, and
1909, amounted to $1,811.60.

By its decree of July 27, 1909, the court, in effect, ruled
that the method adopted by the commissioner in stating
the accounts of the executrix, complained of in said ex-
ceptions, was proper, but recommitted the cause to the
commissioner for the correction of certain minor errors
in the accounts. Later the Lucius tract of land, in which
said infant defendants had no interest, was decreed to be
sold, was sold. The proceeds of sale, together with other
assets of the said testator's estate brought within the con-
trol of the court, produced a considerable reduction in the
outstanding indebtedness of the estate, but not enough
to pay all of its indebtedness, and then followed other de-
crees in the cause leading up to a report by Commissioner
Fletcher, filed on August 15, 1910, showing an unpaid in-
debtedness of the estate amounting to $9,947.88 and a bal-
ance in the hands of the executrix of $3,352.00.

To this report the said infant defendants filed excep-
tions, the second of which related to an indebtedness re-
ported as an outstanding liability against the estate and
known as the "Cover debt," and made the contention that
said debt had been paid, which exception the court sus-
tained and thus eliminated the "Cover debt." The other
of said exceptions made again the contention that the in-
terest on the testator's indebtedness, taxes, etc., credited to
the executrix as against the estate, should have been paid

by the life tenants of the testator's property who received the income therefrom under the will of the testator, so that the seventy-five acre tract of land, in which said infant defendants have an interest after the death of the life tenants, would be relieved from the payment of any of the unpaid debts of the testator; that if the charges of interest, taxes, etc., placed upon these infant defendants were eliminated as a charge against the testator's estate and charged against the life tenants thereof, the estate would be about relieved of any further indebtedness and it would be unnecessary to sell the said seventy-five acre tract of land; but the court again overruled this contention and by its decree entered January 31, 1911, amended the commissioner's report so as to conform it to the court's ruling with respect to the "Cover debt," and as amended confirmed the report, and directed a sale of the seventy-five acre tract of land for the purpose of paying the remaining outstanding indebtedness against said testator's estate: from which decree and that of the 27th of July, 1909, this appeal is taken by the guardian *ad litem* of said infant defendants.

As stated, the contention of appellants is that according to the true and proper construction of said testator's will, there was placed upon the life tenants, Mary Jane, Nellie R., Margaret V. and Fannie E. Gibson, the burden of paying the taxes, interest on the debts secured on the property occupied by them as life tenants, cost of repairs and running expenses; that the executrix should not have received credit, in her settled accounts, for taxes and interest accrued during the period of 1907, 1908 and 1909 and paid by her to the amount, as alleged, of $1,811.60; and that if these items of interest and taxes had not been allowed the executrix it would have increased by that amount the apparent balance in her hands applicable to the payment of debts, and correspondingly decreased the excess of liabilities over assets, and might have avoided

the necessity for a sale of the 75 acre tract of land in which the appellants are alone, as remaindermen, interested.

We consider it wholly unnecessary to review at length in this opinion the several accounts of the executrix, Nellie R. Gibson, stated and reported by Commissioner Fletcher and acted on by the circuit court, since it appears that there are further accounts to be taken in the cause in which minor errors, if any, in the former accounts may be corrected.

The decree of January 31, 1911, complained of, does not hold that the executrix was entitled to credit for taxes paid on the property in the possession and control of the life tenants; on the contrary it expressly holds, and in accordance with the settled law in such cases (*Dowing v. Strouse*, 101 Va. 226, 43 S. E. 348), "that the life tenants are chargeable with all taxes and necessary repairs to the property remaining in their possession, and are required to keep the buildings on the same insured against fire, the policies to be taken out in the name of the life tenants and remaindermen and in the name of the trustee, where buildings are on property devised to the trustee." The fact is, as shown by the record and practically conceded in the brief of counsel for appellants, that the only taxes paid by the executrix and taken credit for in her executorial accounts were the taxes assessed against the testator's estate for the year in which he died, 1907, amounting to $152.22, which taxes were properly to be paid by the executrix, and the payment thereof was rightly credited to her in her accounts. It also appears that instead of the life tenants getting the income from the real estate for the first year of the testator's death, the estate got it, and it, along with other assets, was applied to the payment of his debts.

The controlling question, therefore, for determination

on this appeal is, whether or not the circuit court erred in not ruling that the life tenants of the property held and enjoyed by them under the will of the testator, Gilbert B. Gibson, were bound for the payment of all accruing interest on existing incumbrances upon the property created by the testator, and that payments of interest upon such incumbrances made by his executrix were not properly to be allowed her in the settlement of her accounts as executrix?

The gravamen of the complaint made by appellants in their petition for this appeal is, that the circuit court in its rulings has not placed (as it should have done) the burden upon the four sisters of the testator of paying out of their own means the taxes, interest on testator's debts, repairs and running expenses of the property they took as life tenants and held during the years 1907, 1908 and 1909, but instead the executrix was given credit on her settled accounts for taxes, interest accrued and running expenses during that period and paid by her to the amount, as alleged, of $1,811.60. In the brief of counsel for appellants, however, other objections are made to the method adopted in the settlement of the executrix's accounts, and to certain payments allowed to her as credits against the estate, based upon a statement of facts, but we cannot find in the record that these objections were, by exceptions to the commissioner's reports, raised in the lower court or brought to its attention; nor is it pointed out either in the objections made here or in the record when the several items of interest paid by the executrix and credited to her, of which complaint is made, accrued—that is, whether they accrued before or after the death of the testator. The case was heard on the report of the commissioner, and the accounts filed therewith, September 16, 1910, and the exceptions thereto, and no complaint is made of the court's ruling other than that overruling the third of appellant's

exceptions and confirming the report as to the items referred to in the exception, viz: "all charges of interest on the indebtedness of Gilbert B. Gibson at the time of his death, as set out in the master commissioner's reports of June 5, 1909, October 7, 1909, April 20, 1910, and September 16, 1910" . . .

We have seen that in her settled accounts the executrix has taken no credit for any taxes for years other than the year 1907, and inasmuch as taxes accrue and become personal charges against the owner of real estate as of the first day of February of each year, and as it is to be presumed from the facts appearing in the record that the testator, Gilbert B. Gibson, died subsequent to the first day of February, 1907, the taxes for that year were a personal charge against him and a preferred charge against his executrix, and, therefore, were properly paid by her and she was rightly allowed credit for their payment in her accounts.

The record does not bear out the contention of counsel for appellants, that the life tenants received all of the rents, issues and profits from testator's estate, and have cast the entire burden of accruing interest on the estate and, in effect, on the remaindermen. It is true that the record shows that the executrix took credit in the settlement of her accounts for certain payments of interest in the years of 1907, 1908 and 1909, but when all the facts appearing in the record are looked to there was no other fair and proper way to state the accounts of the executrix for those years than as they were stated and approved by the court. The entire residue of the personal estate remaining after the payment of debts, like the real estate, was bequeathed to the four sisters, who were plainly the principal objects of his bounty, for life, while this remainder in the personal estate after the payments of debts, unlike the remainder in the real estate, was bequeathed to

9

these life tenants and not to others. In the first year after the qualification of the executrix it appears that the personal estate converted and applied to the payment of debts against the testator's estate amounted to over $13,000, the greater portion of which was paid out by the executrix at once, and as to the residue she was charged with and accounted for interest thereon. It further appears from the record that instead of the life tenants getting the income from the real estate for the first year following the testator's death, the estate got the benefit of it, as it has been applied to the payment of testator's debts. The commissioner, in reporting the settlement of the *ex parte* account of the executrix for that year, said: "After the death of Gilbert B. Gibson it was considered to the best interest of the estate not to dispose of all the stock on the farm, but to operate the farm in the usual manner and sell the cattle when fattened and credit the estate with the proceeds." Pursuant to the plan referred to by the commissioner, as the account of the executrix for the first year shows, the estate was credited by the proceeds of fifty-three fatted cattle, which netted $3,680.37, the greater portion of which cattle did not go off until December following the death of the testator and no charge was made against the estate for housing, grazing and fattening said cattle. The account also shows that the estate was credited that year (1907) with $53.00 received from grazing other stock, and with the proceeds of corn raised, to the amount of $677.25, making an aggregate of $1,525.00 actually received in the way of income credited to the estate from the farm lands during the year following the testator's death and applied in the reduction of the debts against his estate.

It is only claimed by the learned counsel for appellants that the aggregate of the items of interest and taxes paid during the first three years by the executrix and credited to her in her accounts amounted to $1,811.60, and when

the taxes for the first year, amounting to $155.22, is deducted therefrom, the amount of interest included in the payments on the debts during the first three years of her administration was but $1,659.38; whereas, as the record clearly shows, the estate has received benefits from the estate devised to the life tenants amounting to several hundred dollars in excess of the aggregate amount credited to her as payments of interest during the same years, leaving wholly out of view how much of the aggregate of the items of interest credited to the executrix, of which complaint is made, accrued in the lifetime of the testator. So that the record, as we view it, does not sustain or justify the complaint that the executrix had been erroneously allowed credit for the payment of taxes and interest in the settlement of her accounts to the injury of the appellants, and for the all-sufficient reason that these payments for which the executrix took credit were payments on the acknowledged debts of the testator and the interest thereon constituted as much an obligation on his estate as the principal of the debts themselves.

The situation in which the testator left his estate was simply this: His personal property, as he recognized to be probable, was not sufficient to pay his debts; certain of his real estate at his death was encumbered either by a trust charged thereon by him in favor of his four sisters or by trust deed creating a specific lien before the making of his will, to secure the payment of a debt, spoken of in the record as the Eliza N. Gibson dower fund, the principal of which debt was to become due and payable at the death of the said Eliza N. Gibson, and the interest thereon to be paid to her annually during her life; specific liens being upon the residue of Sunnyside in which appellants have an interest, as well as upon other real estate of the testator.

The testator, a trained lawyer and a man of affairs, is

presumed to have known that his estate could not be speedily settled—in fact, it plainly appears from his will that he not only expected but desired that his aged sisters, the first objects of his bounty, should have the possession of his real 'estate pending the ascertainment of the necessity for a sale thereof for the payment of his debts, and receive any incidental benefits that might arise therefrom. He gave his entire estate, real as well as personal, to one set of beneficiaries for life, with remainder to others in such portions thereof as *"might remain" after sale for the payment of debts,* all charged with the payment of his debts, and he directed not only the *order* in which the several portions of his estate should be subjected, if found necessary, to his debts, but the manner thereof, viz., by sale. Had he intended that the life tenants of his real estate were not to enjoy the benefits thereof pending an adjustment of his affairs and the ascertainment of the extent of his indebtedness, doubtless he would have so provided in his will by giving his executrix adequate powers to effect his intent, such as the power to take charge of and operate or rent the estate, rather than a bare power to sell in a given contingency certain portions of it in a stated order. Instead of conferring upon his executrix such power, the testator's will clearly and expressly provided that the only way in which his real estate should be subjected to his debts should be *by sale,* expressly directing also the order in which each parcel should be sold. Any advantage resulting to the life takers is merely incidental to the terms in which the testator chose to dispose of his bounty, "the ultimate expression of his wishes," and the remaindermen as well as others took *"cum onere"* and subject to the incidents resulting from carrying into effect that "ultimate expression" of the testator's wishes "which stands as an all sufficient reason for his act and cannot be challenged" by anyone claiming thereunder. *Frazier* v. *Littleton,* 100 Va. 9, 40 S. E. 108.

The general proposition of law, that a tenant for life of property subjected to encumbrances must keep down the interest accruing on such encumbrances during the continuance of his estate, is well established, and is not here controverted, but the doctrine has to be qualified where, as in this case, there is a general charge of all of testator's debts on his real estate, in the event that the personal estate proved insufficient to pay them. In such a case the general doctrine does not apply. *Poindexter* v. *Green,* 6 Leigh (33 Va.) 504, which is in many respects like the case at bar; 18 Cyc. 307 and authorities cited; *Trent* v. *Trent,* Gilmer (21 Va.) 174, 9 Am. Dec. 594, where the opinion by Roane, J., says: "The right of possession thus doubly guaranteed to the present appellants (life tenants) ought not to be disturbed, until a change of possession should be made necessary in fulfilment of the charge imposed on this property by the will; or until mismanagement thereof, or misapplication of its profits, should render it improper that the appellees should hold the possession any longer. In either of these events, however, the case ought to be previously made out to justify the interposition of the court." See also *Hobson* v. *Yancey,* 2 Gratt. (43 Va.) 75; *Frazier* v. *Littleton, supra; French* v. *Vandenburg,* 105 Va. 16, 52 S. E. 695, 3 L. R. A. (N. S.) 898, 115 Am. St. Rep. 838, 8 Ann. Cas. 5901, where the principle is recognized.

If the testator in this case desired, as his will plainly indicates, the life tenants to take all of his real estate and have the use of it until it became apparent that some of it had to be sold for the payment of his debts, those who take under his will, whether as life tenants or remaindermen, are but partakers of his bounty, and take it *cum onere* and subject to the liability that when it becomes apparent that the personal estate will not be sufficient to pay his indebtedness, that (in the language of

the will) *"then"* the real estate devised to them in re-
mainder, both life estate and remainder, must be sold.
Nowhere in the will is there a suggestion of a purpose on
the part of the testator that his estate was to be subjected
to the payment of his debts by renting the same, the only
provision made to that end being for a sale of certain
of his real estate in a given event.

The devise to appellants in remainder is not the "resi-
due of the Sunnyside tract," but the same "or any part
of same or proceeds thereof, if sold for the payment of
my debts, that may remain." As we view the record it
cannot be questioned that the necessity for the sale of this
parcel of the testator's real estate for the payment of his
remaining outstanding indebtedness had arisen when the
decree directing its sale, of which complaint is made, was
entered; and we have been unable to find in the settled
accounts of the executrix that any injustice has been done
appellants. The accounts appear to have been stated upon
correct principles of law, and the exceptions taken to the
account dealt with in the decree of July 27, 1909, as said
by the learned judge of the circuit court in his opinion
made a part of the record, "but merely go to the methods
of stating the accounts by the commissioner and calling
attention to apparent errors and are largely argumenta-
tive of the main question submitted."

Appellees assign as cross-error so much of the decree
of January 31, 1911, appealed from, as holds that it is
the duty of the life tenants to take out insurance, either
for the benefit of themselves or for the remaindermen,
on the buildings on the real estate devised either to them
directly or to trustees. Whether such a burden could, in
any case, be imposed by a court of equity upon a life tenant
for the benefit and protection of the remaindermen, we
need not express any opinion here, but are of opinion
that the situation of the testator's property, as appears

from the record in this case, did not warrant the require-
ment of the life tenants thereof in the decree of January
31, 1911, with respect to insurance of buildings thereon,
and the decree will be amended by striking out of it that
requirement; and as so amended it, as well as the decree
of July 27, 1909, will be affirmed.

*Amended and Affirmed.*