# Wytheville

CHARLES T. LIVESAY V. CHRISTIE A. BOYD, ET ALS.

June 13, 1935.

Present, All the Justices.

The opinion states the case.

*Richard H. Mann,* for the appellant.

No appearance for the appellees.

EGGLESTON, J., delivered the opinion of the court.

By the will of his father, who died in 1892, Charles T. Livesay acquired a tract of land "for and during his natural life with remainder in fee at his death to his lineal descendants." In accordance with the will the life tenant took possession of, and held the land until it was condemned by the United States government in 1919 for a part of Camp Lee.

The net proceeds of the award, amounting to $19,479.50, were invested, under the decrees of the Circuit Court of Prince George county in a chancery suit instituted for that purpose, in a first mortgage loan on real estate in the city of Petersburg, Virginia. The interest was regularly paid to the life tenant until the debtor, Petersburg Tobacco Warehouse, Incorporated, defaulted on the instalment due June 14, 1932. Because of this default, and of the failure to pay taxes and insurance premiums, the court, on the petition of the life tenant, ordered the property advertised and sold in accordance with the terms of the deed of trust. At the sale it was bid in and purchased at $17,500 by a special commissioner appointed for the purpose. Upon confirmation of the sale the property was deeded to the said special commissioner to be held, used and disposed of by him in accordance with such decrees as might thereafter be entered by the court in said cause.

The special commissioner was further authorized to borrow the sum of $3,500, evidenced by his interest-bearing note dated July 31, 1933, payable one year after date, and to secure the same by a first lien deed of trust on the property, likewise executed by him. The note having been discounted with a local bank, $2,940.24 of the proceeds were

used, under the decrees of the court, to pay one year's interest on the note, delinquent taxes on the property, and the expenses of the said foreclosure sale. The balance of $547.16 was deposited in bank to the credit of the cause.

Under the authority of the court the special commissioner leased the property for a term beginning September 20, 1933, and ending March 20, 1934, at a rental of $1,650, payable in six monthly instalments of $275 each.

On November 14, 1933, the life tenant filed his petition in the chancery cause, making parties thereto all persons presently or contingently interested, reciting the above facts and alleging that there was due to him accumulated unpaid interest by the original deed of trust debtor, Petersburg Tobacco Warehouse, Incorporated, amounting to $1,577.30 as of July 27, 1933. The life tenant prayed: (1) That the said sum of $547.16, the unconsumed proceeds of the $3,500 note, be paid to him on account of the said unpaid interest; (2) that the balance of said past due interest be paid him "in such manner as the court may deem proper"; and (3) that the entire net rent from the property, after deducting a sufficient amount to pay taxes and insurance premiums, be paid to him.

The infant defendants, by their guardians *ad litem,* filed the usual formal answers. All of the adult defendants, except two, filed their answers consenting to the relief prayed for in the petition.

Two remaindermen under the will demurred to the petition, and from the decree sustaining this demurrer and dismissing the petition this appeal was granted.

■ (1) The action of the trial court in refusing to pay to the life tenant the sum of $547.16 on account of his unpaid interest was clearly right. This balance is in no sense income. While the court authorized the special commissioner to borrow $3,500 to pay the expenses of the foreclosure sale and delinquent taxes, these amounted to only $2,940.24. The loan, therefore, was excessive by the amount of $547.16. Obviously this last named sum should be applied to reduce the principal of the note.

(2) As to the unpaid interest of $1,577.20 due the life tenant by the Petersburg Tobacco Warehouse, Incorporated, neither the petition nor the brief suggests any means of paying it out of the trust estate except "in such manner as the court may direct." Certainly there is no obligation on the remaindermen to contribute to it. Such part thereof as is uncollectible is the loss of the life tenant and not of the remaindermen.

(3) The life tenant next prayed that after the deduction of a sufficient amount to pay the taxes and insurance on the property, the whole balance of the rent collected therefrom should be paid to him. Although no mention is made in the petition in the lower court of the life tenant's obligation to pay the interest on the $3,500 deed of trust note, this is conceded in his petition for appeal.

The record before us is silent as to what disposition the trial court made of the rents, but we understand from the brief and oral argument that the court below was of the opinion that, after providing for the payment of taxes and insurance, the balance of the rents should be applied to a liquidation of the $3,500 note. This, we believe, was right.

We are not unmindful of the general principle that where property comes to a life tenant already subject to a mortgage, the life tenant is entitled to the entire income (17 R. C. L., page 628, section 18; 21 C. J., page 945, section 81), out of which he must pay interest (*Kincheloe* v. *Gibson,* 115 Va. 119, 78 S. E. 603), taxes (*Downey* v. *Strouse,* 101 Va. 226, 43 S. E. 348; *Kincheloe* v. *Gibson, supra*), and fire insurance premiums (26 R. C. L., page 1382) ; and that he is not bound to discharge any part of the principal of the incumbrance (17 R. C. L., page 639, section 29; 21 C. J. 959; *Thomas* v. *Thomas,* 17 N. J. Eq. 356, 359).

Yet we believe that under the peculiar circumstances of this case, the principal of this relatively small debt should be liquidated before the income is paid to the life tenant. This property did not come to the life tenant already subject to the mortgage. The lien was placed thereon by the

court in a proceeding acquiesced in by the life tenant, and for the benefit of both him and the remaindermen. The proceeds were used for the purpose of clearing up unpaid taxes and necessary expenses. If these had not been paid there would have been no trust fund for either the life tenant or the remaindermen.

It is equally true that unless some provision is now made for the liquidation of the $3,500 note there might be a foreclosure sale of the property, resulting in a loss to both the life tenant and the remaindermen.

Furthermore, there is no suggestion in the record that the life tenant objected to the borrowing of this money on the property for the payment of the taxes and these necessary expenses. Indeed, he appears to have acquiesced therein. It is evident that he stood by and saw the court enter a decree authorizing the special commissioner to execute a note dated July 31, 1933, payable one year after date, and to secure the same by a lien on the entire estate, including his interest in the property. He is bound to have known that by fixing the maturity of this note within a short period of time the court was, in effect, pledging his rents for the payment thereof. How else could it have been paid? Had he intended to take the position that no part of the income, during his life, should be applied to the payment of the principal of the note, he should have insisted that an appropriate provision to that effect be inserted in either the note or in the decree authorizing its execution, or in both. We think, therefore, he is now estopped to contend that the income be paid to him, thus leaving no provision whatsoever for the payment of the principal of the note.

But this does not mean that the remaindermen are freed from the ultimate obligation to discharge the principal of the note, for it is well settled that where the life tenant's income is used for that purpose, since he is liable only for interest, he is entitled to reimbursement from the remaindermen for that portion of their indebtedness which he has so discharged.

The applicable principle is thus stated in 17 Ruling Case Law, page 639, section 29:

"29. *Duty as to Incumbrances; Reimbursement for Payment.*—The duty of a life tenant to preserve the estate includes the obligation to keep down the interest upon existing incumbrances, but he is not compelled to pay off the principal sum when it becomes due or thereafter, and it is a general rule that a life tenant, who, in order to preserve the estate pays off an incumbrance upon the fee, is entitled to reimbursement or contribution from the reversioners or remaindermen to the extent of their interest in the land; by paying off the incumbrance the tenant acquires a lien on the reversionary interest or is subrogated to the rights of the incumbrancer. But since the life tenant is liable for the interest on an incumbrance against the estate, he is not, upon discharging the incumbrance, entitled to reimbursement in full. The rule is that the payment by the life tenant of the present worth of an annuity equal to the annual interest running during his expectancy of life represents his individual indebtedness, and the balance, after subtracting that sum from the mortgage debt, is the share which the remaindermen should contribute."

The proportionate amounts due by the life tenant and the remaindermen, respectively, in settling the balance of $2,940.24 due on the note (after applying the deposit of $547.16 thereon) can easily be fixed by applying the above rule to the annuity tables and rules of calculation set out in sections 5131-5133 of the Code.

We think, therefore, that the rents should be applied first to the payment of taxes and fire insurance premiums on the property, and the balance to liquidate the interest and principal of the note. The life tenant will be entitled to reimbursement or contribution from the remaindermen to the extent of their interest in the land, to secure which he should have a lien on the reversion. If the property is sold during the life tenancy, the life tenant should be reimbursed, with interest, for the amount which he has contributed for the benefit of the remaindermen. Should

the property not be disposed of before the death of the life tenant, his claim against the remaindermen will pass to his estate.

After the principal and interest of the note have been discharged in full, the life tenant will be entitled to the entire income from the property during his life, subject to his obligation to pay taxes, insurance premiums and ordinary repairs thereon.

These results can be obtained in the principal chancery suit regardless of the dismissal of the petition. However, since the lower court was right in sustaining the demurrer to, and dismissing the petition, the decree will be affirmed.

*Affirmed.*