BESSIE A. MAIRS *v.* CENTRAL TRUST COMPANY, *Trustee, etc., et al.*

(No. 9624)

Submitted April 11, 1945.  Decided July 3, 1945.

*Brown, Jackson & Knight* and *John C. Morrison,* for appellants.

*C. Paul Heavener,* for appellee.

LOVINS, PRESIDENT:

This suit was instituted by Bessie A. Mairs in the Circuit Court of Kanawha County against Central Trust Company, Trustee under the last will and testament of Atlee Mairs, Daniel A. Mairs, and Robert L. Mairs, infants. Bessie J. Delaney and Tressa Mathes were subsequently made parties defendant. After the pleadings were filed the suit was transferred to the Court of Common Pleas of Kanawha County for hearing. A decree was entered by the court of common pleas granting substantially the relief prayed for. Central Trust Company appealed from the decree to the circuit court, in which appeal Bessie A. Mairs filed cross assignments of error. Upon hearing in the circuit court a decree was entered affirming in part and reversing in part the decree of the trial court. Central Trust Company prosecutes this appeal from the decree of the circuit court, and Bessie A. Mairs likewise complains of said decree and assigns errors.

At the time of his death Atlee Mairs owned two adjoining parcels of land in the City of Charleston, West Virginia, one of which was unimproved and on the other

was located a five-unit apartment house. He also owned an interest in real estate situate in Kanawha County, which after his death was leased by Central Trust Company, Trustee, for oil and gas purposes. Gas was produced from the land, and the trustee, commencing in the year 1938, received royalty on the gas produced therefrom. Mairs executed a deed of trust, dated April 15, 1931, by which he conveyed the apartment house and vacant lot to Central Trust Company, Trustee, to secure the payment of $25,000.00 evidenced by fifty notes for $500.00 each, bearing interest at six per centum per annum, payable to bearer. Five of said notes were payable each year, commencing April 15, 1933. The existence of the trust deed is admitted, and a copy thereof was ordered to be made a part of the record by the trial court, but the trust deed is not incorporated in the record before us, and we cannot consider its provisions.

Mairs and Central Trust Company entered into a property management agreement, dated April 17, 1931, by which the apartment house property and vacant lot were placed under the exclusive management of Central Trust Company as agent for a period of eleven years, or until the indebtedness secured by the trust deed hereinabove mentioned should be fully paid. The agreement states that Mairs would construct a ten-unit apartment house on the vacant lot, which was done. It is stipulated that the income from the apartment house property should be applied to payment of: (1) Commission to Central Trust Company; (2) taxes and assessments; (3) charges for repairs, advertising, and incidental supplies; (4) principal and interest of the notes hereinabove mentioned; (5) premiums for insurance on the property; (6) premiums on life insurance policy in the amount of $25,000.00 to be issued on the life of Atlee Mairs, payable to Central Trust Company as beneficiary. The residue of the amounts collected was to be held subject to Mairs' order.

Mairs died testate on November 14, 1931, and by his will bequeathed to Bessie A. Mairs, his widow, $1,000.00 and other personal property, and devised and bequeathed

the residue of his estate to Central Trust Company, Trustee, in trust. The trustee was given power to hold, manage, and control the trust property, and to receive the rents, issues and profits therefrom, with power to lease, sell, and dispose of the same. After payment of taxes, insurance, repairs and other necessary expenses, including trustee's commissions, the trustee was directed to pay Bessie A. Mairs out of the net income the sum of $250.00 a month for life, or so long as she remains unmarried "if the net income from said trust estate is sufficient to pay said sum; if not, then as much thereof as such net income amounts to, calculated on a monthly basis." The will provided that the sum of $250.00 should be used for the support of Bessie A. Mairs and the children of testator, and that if Bessie A. Mairs should remarry that $100.00 a month should be paid to her and $150.00 a month should be paid to or for the benefit of testator's children. Testator directed that any surplus of net income remaining after the payments aforesaid should be set aside and invested by the trustee to provide a fund for the education, maintenance and support of his children surviving him. In the event of the death of Bessie A. Mairs and testator's children without issue surviving and upon termination of the trust, the trust estate then remaining was limited over to Bessie J. Delaney and Tressa Mathes, or their heirs. The will appointed Central Trust Company executor thereof. Other provisions of the will are not pertinent to the issues here presented.

Central Trust Company qualified as executor and trustee under the will on November 20, 1931, and has been administering the estate since that time. The estate, consisting principally of the real estate heretofore mentioned, was appraised at $76,573.03. During the first year of the administration of the estate, debts amounting to $4,176.68 were paid, and during the second year, which ended November 20, 1933, debts amounting to $967.00 were paid. It was unnecessary to sell any personal property to satisfy such indebtedness. The nature of the indebtedness so paid is not shown by the record, nor does it appear that

any claims against the estate were filed with the commissioner of accounts and report thereof made by such officer. After November 30, 1933, the executor and trustee made no disbursements other than to pay administrative expenses, the legacy of $1,000.00 and the monthly sums due Bessie A. Mairs in whole or in part. In June, 1938, and since that time, the trustee has paid the sum of $250.00 a month, as provided by the will of her husband.

Central Trust Company, as agent under the property management agreement, collected rents from the apartment house property, disbursed the same for its compensation, taxes and repairs and paid the interest on the notes hereinabove mentioned and the principal thereof in the amount of $22,500.00. Central Trust Company, as agent, then paid the residue of the income derived from rents collected to Central Trust Company, executor and trustee under the will. The payment of the principal and interest of the lien by Central Trust Company, as agent, reduced the net income paid to the executor and trustee, so that the full amount of $250.00 a month could not be paid to Bessie A. Mairs. However, partial payments were made. She acquiesced in the application of the rentals received from the apartment house property to payment of said interest and principal.

Central Trust Company, as trustee and executor, included in its reports and settlements before the commissioner of accounts, the sums received by it as agent, executor and trustee.

This suit was commenced by Bessie A. Mairs to recover deficits in the monthly installments accruing from the death of her husband until and including the month of May, 1938, and to recover interest on the $1,000.00 legacy from one year after Mairs' death until paid.

After a hearing the trial chancellor decreed that plaintiff recover the amount of monthly deficits from the month of December, 1933, to and including the month of May, 1938, together with interest thereon from the respective due dates of such deficits, and that said recovery be paid out of principal or income of the trust estate.

The decree also sets forth that the principal of the monthly installments accruing from December, 1933, to and including the month of May, 1938, amount to $13,-500.00, with interest thereon to April 14, 1942, amounting to $4,961.25; that from the aggregate of such principal and interest, payments on the principal amount in the sum of $6,445.00, plus interest calculated thereon for the elapsed time in the amount of $2,177.65 should be deducted, and that the balance due plaintiff amounted to $9,838.60.

The trial chancellor found that the trustee had in its possession as principal the sum of $5,651.44, directed the trustee to pay plaintiff the sum of $5,000.00, and to pay the residue at the rate of $100.00 a month. The trial chancellor decreed that plaintiff recover interest on the legacy from November 14, 1932, until May 12, 1937. He adjudged royalty from the gas-producing land to be principal. The decree specifically shows that the trustee had accounted for the monies coming into its hands; that Central Trust Company in its other capacities in relation to the estate of Mairs had properly accounted for all monies coming into its possession. The settlements of Central Trust Company as trustee, executor and agent were ratified, approved and confirmed; the trust deed hereinabove mentioned was ordered to be made a part of the record; and the trustee was directed to pay the fees of the guardian *ad litem* and counsel representing the trust company and the costs.

Upon appeal to the Circuit Court of Kanawha County, the decree of the trial court was affirmed in part and reversed in part. The circuit court held that the gas royalty should be treated as income; that Bessie A. Mairs be charged with forty per centum of the interest paid on the debt of $25,000.00, and adjudged the net balance due Bessie A. Mairs to be $7,185.88; that Central Trust Company pay $3,000.00 of the amount due her out of surplus net income held by it; and that the residue be paid at the rate of $100.00 a month out of surplus net income. In all other respects the decree of the trial court was affirmed. The circuit court ordered that an accounting

be made to date of the decree for the purpose of ascertaining the amount of net income to the credit of the estate, then in the hands of the trustee. From that decree this appeal is prosecuted by Central Trust Company, testamentary trustee, and Bessie A. Mairs.

The material questions raised by the Central Trust Company and the plaintiff are: (1) Was the power given by the property management agreement terminated by the death of Mairs; (2) is plaintiff entitled to recover the unpaid deficits in the monthly sums of $250.00; (3) if plaintiff is entitled to recover said deficits, is she entitled to interest thereon; (4) is plaintiff entitled to interest on the legacy of $1,000.00; (5) does estoppel bar plaintiff's recovery; (6) is gas royalty to be treated as income or principal; (7) should the Central Trust Company, Trustee, be required to make accounting for the purposes of this suit; and (8) are costs properly adjudicated against Central Trust Company, Trustee.

We cannot determine the legal effect of the trust deed provisions for the reason that such instrument is not in the record before us. Reference is made to the trust deed in the order of the trial court and the existence thereof seems to be conceded, but we cannot give its provisions effect.

As a general rule death of a principal terminates an agency. However, where an agency is coupled with an interest in the property which is the subject matter of the agency, so that the agent may execute the power in his own name, death of the principal does not terminate the relation. *Drake* v. *O'Brien*, 99 W. Va. 582, 130 S. E. 276. In order that an agency be irrevocable there must be an interest in the property on which the power is to operate. *Drake* v. *O'Brien, supra*. The property management agreement does not vest in Central Trust any interest in the apartment house property. If the trust company has any interest in the property, it was conveyed by the trust deed, and is held in its capacity as trustee rather than as an agent. Although reference is made in the agreement to the trust deed, such reference vests no interest in the subject matter of the agency. It will be

borne in mind that the property management agreement provides for payment of premiums for insurance on the life of Atlee Mairs, payable to Central Trust Company in the sum of $25,000.00, a sufficient sum to discharge the lien debt. For some reason this insurance was not obtained. To us this is some indication that Mairs and the trust company intended the proceeds of the insurance to discharge the indebtedness mentioned in the agreement. Had the insurance been effected on Mairs' life and the proceeds thereof collected, the lien debt could have been paid, and no reason would then have existed for a continuation of the agency. We hold that the power given by the property management agreement was terminated by Mairs' death.

There being no ambiguity in the will we apply the provisions of that instrument in determining the rights of the contending litigants. The paramount intention of the testator was to provide for the support and maintenance of his widow and children out of the net income from the trust estate. The testator foresaw that such income might be insufficient to pay the full amount of $250.00 a month, and his will permitted a variance from that amount when such insufficiency should occur; hence no annuity was created by the will. *Grand Rapids Trust Co.* v. *Herbst,* 220 Mich. 321, 190 N. W. 250; *Wilkin* v. *Board of Com'rs.,* 77 Okla. 88, 186 P. 474.

It is conceded that Central Trust Company, as agent, paid a part of the net income from the rentals of the apartment house property to Central Trust Company, Trustee, in payment of the lien debt thereon, and that such action prevented payment of the amount due plaintiff under her husband's will. Plaintiff in this instance occupies a position analagous to a life tenant. The effect of the application of such income was to take from plaintiff the amounts so paid and apply them on the debt due from the trust estate and a charge against the corpus thereof. Although used for the benefit of the trust estate, such application was unauthorized. Money due plaintiff was taken by the trustee to discharge a lien debt outstanding against the apartment house property, and she

is entitled to reimbursement. *Livesay* v. *Boyd,* 164 Va. 528, 180 S. E. 158. See 87 A.L.R. page 220 note where the authorities are collated.

The provision of the will to the effect that upon the remarriage of Bessie A. Mairs she should be paid one hundred dollars a month and the sum of one hundred fifty dollars a month should be applied to the maintenance and support of testator's children shows an intention on the part of testator to allocate the benefit of the sum of $250.00 on the basis of forty per cent to his widow and sixty per cent to his children. A life tenant is liable for interest on a lien debt on the corpus of an estate in remainder. *Livesay* v. *Boyd, supra.* Since it was the intention of the testator to allocate the sum of $250.00 a month to his widow and children in the proportions above noted, we treat the children of testator as being life tenants to that extent. Plaintiff is therefore chargeable with forty per cent of the interest on the lien debt on the apartment house property and the decree of the circuit court in that particular will not be disturbed.

Money rightfully belonging to the plaintiff was diverted to the benefit of the remaindermen. The trustee is therefore required to reimburse plaintiff in the aggregate amount of the deficits in monthly payments due plaintiff from November 14, 1931, to and including the month of May, 1938, with interest on the several amounts from their respective due dates.

Should Central Trust Company be required to pay interest on the deficits as well as on the legacy? It is a general rule that one who withholds money from the rightful owner on the date when it should be paid is liable for interest. *Shank* v. *Groff et al.,* 45 W. Va. 543, 32 S. E. 248. See *Jones* v. *Williams,* 2 Call, 102, 106. The foregoing rule with reference to payment of interest is applicable to money due from a trustee to the beneficiaries of the trust. Scott on Trusts, Vol. 2, Sections 182 and 207.1. It is the settled law of this jurisdiction that interest is payable on a legacy. *Bradford et al.* v. *McConihay et al.,* 15 W. Va. 732, 764; *Anderson et al.* v. *Piercy*

*et al.,* 20 W. Va. 282, 327. And it formerly was the rule that where no time of payment was fixed, interest on a legacy payable out of the general estate commenced one year from testator's death. *Bradford et al.* v. *McConihay et al., supra.* This Court has held that interest on a legacy in some instances commenced at the date of testator's death. *Dunn* v. *Renick,* 33 W. Va. 476, 10 S. E. 810; *Couch v. Eastham,* 29 W. Va. 784, 3 S. E. 23. It is now provided by statute, in effect prior to testator's death, that a personal representative cannot be compelled to pay a legacy until one year has elapsed "* * * from the date of the order conferring authority on the first executor * * * of such decedent, and not then unless the report of claims against the estate made by the commissioner of · accounts has been confirmed and no appeal has been taken from the order of confirmation." Code, 44-2-25. The will under which Central Trust Company, Trustee, is acting, was probated November 20, 1931, and it may be assumed that an order was entered on that date giving the trust company authority to act as executor, but there is nothing in the record to show that the report of claims against the estate, as required by Code, 44-2-25, has been made or confirmed. We think that the failure to make such showing precludes the allowance of interest on the legacy of $1,000.00.

Central Trust Company asserts that plaintiff having acquiesced in payment of the lien debt out of income from rental is now estopped of recovery and relies on the case of *Sweeney* v. *Trust Co.,* 116 W. Va. 344, 180 S. E. 897. We find nothing in this record to indicate that any person has been misled or prejudiced by such acquiescence and therefore she is not estopped to assert her right of recovery as a beneficiary of the trust.

The trial chancellor held that gas royalty constitutes a part of the principal of the trust estate. On appeal to the circuit court that ruling was reversed, the latter court holding that royalty is income and not principal. The classification of gas royalty as income or principal turns on the question whether the gas well from which the same is derived was an open well in fact or in contem-

plation of law at the time of the death of the owner of the preceding estate. If a mine or well is open when the life tenant comes into possession, he may work such mine or well to exhaustion unless precluded by the instrument creating the life estate. The income from such well goes to the life tenant and not the remainderman. *Koen* v. *Bartlett,* 41 W. Va. 559, 23 S. E. 664; *Williamson et al.* v. *Jones et al.,* 43 W. Va. 562, 27 S. E. 411; *Weekley* v. *Weekley,* 126 W. Va. 90, 27 S. E. 2d 591. "A tenant for life may work open salt or oil wells or mines even to exhaustion, without account, but cannot open new ones." *Williamson et al.* v. *Jones et al., supra.* Where a well is not open at the time the life estate commences only interest on the royalty goes to the life tenants, and the principal goes to the remainderman. *Wilson et al.* v. *Youst et al.,* 43 W. Va. 826, 28 S. E. 781. If the owner of a preceding estate of inheritance authorizes a mine or well to be opened or drilled on his land, and such mine or well is not opened or drilled until after his death, the mine or well will be considered an "open" mine or well as of the date of the owner's death, and a life tenant is entitled to receive the royalty as issues and profits of the land. *Minner* v. *Minner,* 84 W. Va. 679, 682, 100 S. E. 509. Plaintiff, in effect, contends that the rule announced in the *Minner* case should be applied here, citing in support of that contention the cases of *Re Knox,* 328 Pa. 177, 195 A. 28, and *Eager* v. *Pollard,* 194 Ky. 276, 239 S. W. 39. In this case authority for opening a gas well on testator's land apparently was given by a lease executed by Central Trust Company, Trustee, some time after testator's death. The only authority for making the lease is derived from the provisions of the will. The portion of the will conferring authority to lease land belonging to the trust estate is general. No specific reference is made to leasing testator's land for the production of gas. We think that the general authority given in the will is not sufficient to show that Mairs either contemplated that his land would be developed for gas, or that he authorized a gas well to be opened. It would be a departure from reality to say that the well from which the royalty has been received

by the trustee herein was an "open" well in contemplation of law at the time of testator's death. It is our conclusion that the royalty received by the trustee is a part of the principal of the trust estate.

An examination of this record clearly shows the necessity for an accounting to date; otherwise the trial chancellor would have no basis for determination of the amount which the trustee should be required to pay out of net income. We find no error in the decree of the circuit court requiring such accounting.

A court of equity has inherent power and wide discretion to adjudicate the payment of costs. *Hannah* v. *Wilson Lumber Co.,* 92 W. Va. 104, 114 S. E. 506; *Davis* v. *Bsharah,* 111 W. Va. 500, 163 S. E. 19; *Smith* v. *Gas Co.,* 115 W. Va. 127, 129, 174 S. E. 796. We find nothing tending to show that the trial court exceeded its power or abused its discretion in adjudging costs against Central Trust Company, Trustee, payable out of the trust estate.

As to the award of costs in the circuit court and in this Court, the party substantially prevailing is entitled to recover costs. Code, 59-2-11. The plaintiff substantially prevailed in the Circuit Court of Kanawha County and in this Court, and she is therefore entitled to have an adjudication of costs, payable out of the trust fund now in the possession of the trustee.

The decree of the Circuit Court of Kanawha County is reversed in so far as it is held therein that the payments due plaintiff commenced in December, 1933; that gas royalty is income; that the amount of recovery to which plaintiff is entitled is $7,185.88; and that the sum of $3,000.00 be paid immediately and the residue be paid at the rate of $100.00 a month. In all other respects the decree of the circuit court is affirmed, and this cause is remanded to the Court of Common Pleas of Kanawha County where the amount due plaintiff will be ascertained and decreed to her to be paid out of net income, and for further proceedings consistent with this opinion.

*Affirmed in part; reversed in part; and remanded.*