PRESENT:  All the Justices

SANDRA FLORA SNEAD LARSEN

              OPINION BY
v.  Record No. 190832       JUSTICE TERESA M. CHAFIN
              MAY 28, 2020

PAMELA LARSEN STACK, ET AL.


FROM THE CIRCUIT COURT OF FRANKLIN COUNTY
Clyde H. Perdue, Jr., Judge


Sandra Flora Snead Larsen ("Sandra") contends that the Circuit Court of Franklin County misinterpreted certain provisions of her late husband's will.  Upon review, we find no error in the circuit court's decision.

## I.  BACKGROUND

Erik Larsen ("Erik") died testate on April 14, 2017.  Erik's will divided his estate between his wife, Sandra, his children, Pamela Larsen Stack ("Pamela") and Kirk Larsen ("Kirk"),[*] and his grandchildren.

The fifth article of the will addressed Erik's house and farm.  That provision stated

> FIFTH: I devise the following described property to my children,
> namely, Pamela Larsen Stack and Kirk Larsen, subject to my wife,
> Sandra Flora Larsen, having the right to reside in our home located
> at 394 Mystic Lane, Wirtz, Virginia, 24184, for so long as she is
> physically and mentally able to do so, and for my wife, Sandra
> Flora Larsen to receive the monthly rental payments, as provided
> for in the PCS Site Agreement (Cell Tower), dated April 16, 2013,
> for as long as she resides in our home, it being all that certain tract
> or parcel of land (Tax Parcel #28-90) containing 101.39 acres,
> more or less, situated, lying, and being in the Gills Creek
> Magisterial District, Franklin County, Virginia, it being the same
> property conveyed to Erik Larsen, from James C. Ellis, by Deed
> dated February 7, 1972, said deed being of record in the Clerk's
> Office of the Circuit Court of Franklin County, Virginia, in Deed
> Book 277, at page 38.

---

[*] Sandra was the stepmother of Erik's children.

The sixth article of the will addressed additional real property that Erik owned at the time of his death. In pertinent part, that provision stated "SIXTH: I hereby give to my wife, Sandra Flora Larsen, a life estate in my property located at 5414 Quail Ridge Court, Roanoke, Virginia 24018, . . . [w]ith the remainder interest to my children, Pamela Larsen Stack and Kirk Larsen."

On April 18, 2018, Pamela and Kirk filed a complaint for declaratory judgment in the Circuit Court of Franklin County. The complaint requested the circuit court to construe the terms of Erik's will and determine the extent of Sandra's interest in Erik's house and farm. The complaint asserted that Pamela and Kirk believed that the will gave Sandra a limited right to live in Erik's house "for so long as she is physically and mentally able to do so," rather than a life estate in the entire property.

The circuit court held a hearing regarding the declaratory judgment action on January 3, 2019. During the hearing, the circuit court determined that Erik's will did not clearly establish the scope of Sandra's interest in the house and farm. Consequently, the circuit court permitted W. Colby Brown, the attorney who drafted Erik's will, to testify.

Brown testified that Erik intended for Sandra "to be able to stay on the property, and . . . [receive] the money from the cell phone tower." However, Brown clarified that Erik "wanted his children to end up with the property." Brown explained that Erik did not give Sandra a life estate in the property because he was concerned that she would be required to sell such an interest before she could obtain Medicaid coverage.

Brown believed that Erik intended for Sandra to have access to the entire farm as long she was physically and mentally able to reside in the house. Brown explained that "in the event that [Sandra] had to go into a nursing home basically, or . . . couldn't live by herself anymore,

2

something like that, then at that point her interest in the property would dissolve . . . and then it would go to the children."

At the conclusion of the hearing, the circuit court determined that Sandra did not have a life estate in the property. The circuit court explained that Erik's will gave Sandra the right to reside in Erik's house and the right to access the entire farm. The circuit court then noted that Sandra's rights were "subject to be terminated when she is no longer physically or mentally able to reside in the home."

The circuit court's final order explained its decision in greater detail. The order explained that Erik's will gave Sandra a right to "reside" on the property rather than a life estate. Quoting the Sixth Edition of Black's Law Dictionary, the order noted that the term "reside" means "'to live, dwell, abide, stay and remain upon.'" The order then clarified that Sandra's right to reside on the property included the right to access and enjoy the entire farm. The order also acknowledged that Erik's will gave Pamela and Kirk rights concerning the property. The order explained that the property rights of Pamela and Kirk were "limited only to the extent that they interfere[d] with [Sandra's] ability to live on the property by herself."

The order reiterated that Sandra only had the right to reside on the property "for so long as she is physically and mentally able to do." Quoting Brown's testimony, the order explained that "it was [Erik's] intent in the use of the phrase 'physically and mentally able to do so' that [Sandra's] interest in residing on the property would end 'in the event she had to go into a nursing home . . . or . . . couldn't live by herself anymore.'"

Sandra appealed the circuit court's decision following the entry of the final order.

3

## II. ANALYSIS

Sandra presents three assignments of error on appeal. In her first assignment of error, Sandra contends that the circuit court erred by concluding that Erik's will did not give her a life estate in the property at issue. In her second assignment of error, Sandra argues that the circuit court erred by construing the will in a manner that allowed Pamela and Kirk to access and use the property. In her third assignment of error, Sandra maintains that the circuit court erred by considering parol evidence when it construed the limitation that the will placed on her right to reside on the property.

We review de novo the circuit court's interpretation of the legal effect of the will. *Jimenez v. Corr*, 288 Va. 395, 404 (2014). The "cardinal principle" of will construction is that the intention of the testator controls. *Gillespie v. Davis*, 242 Va. 300, 303 (1991). The intention of the testator serves as the "polar star" to guide and direct the interpretation of the will. *Feeney v. Feeney*, 295 Va. 312, 318 (2018) (quoting *Roller v. Shaver,* 178 Va. 467, 472 (1941)).

"We must determine the intention of the testator from the language which he has used, and if the meaning of that language is plain, the will must be given effect accordingly." *Id.* at 317. "To ascertain a testator's intention 'the whole will must be examined' and 'effect should be given to all [its] parts . . . , as far as possible.'" *Id.* (quoting *Haag v. Stickley*, 239 Va. 298, 302 (1990)). "Extrinsic evidence may be considered only if the language of the will is ambiguous, that is, susceptible to more than one interpretation." *Gaymon v. Gaymon*, 258 Va. 225, 230 (1999).

Applying these established principles, we conclude that the circuit court did not err when it interpreted the terms of Erik's will.

A. ERIK'S WILL DID NOT GIVE SANDRA A LIFE ESTATE

Sandra maintains that Erik's will gave her a life estate in the property subject to an executory limitation. We disagree with Sandra's argument.

In general, a "life estate" is "[a]n estate held only for the duration of a specified person's life, usu[ally] the possessor's." Black's Law Dictionary 689 (11th ed. 2019). A life tenant "has the right of possession and to the full enjoyment and use of the land and all the profits arising during his estate therein." 1 T.W. Harrison & James P. Cox, Harrison on Wills and Administration for Virginia and West Virginia § 19.14, at 19-34 (4th ed. 2019). A life tenant also "must pay the taxes and preserve the property and pay interest on encumbrances." *Id.* § 19.15, at 19-35. Conditional or executory limitations may be placed on life estates. *Edwards v. Bradley*, 227 Va. 224, 228 (1984).

"No specific words are required to create a life estate." *Gaymon*, 258 Va. at 231. "[A] life estate may be created by implication as well as by explicit language, provided the will shows the requisite intent." *Edwards*, 227 Va. at 229. In any event, "a testator's intention to convey such an estate must be plainly manifested in the will." *Feeney*, 295 Va. at 318.

In the present case, Brown testified that Erik did not intend to give Sandra a life estate in the property at issue. Brown's testimony was consistent with the terms of Erik's will. The will did not give Sandra a "life estate" or grant her an estate in the property "for life." Rather, the fifth article of the will devised the property to Pamela and Kirk in fee simple subject to Sandra's "right to reside in [the] home . . . for so long as she is physically and mentally able to do so."

Although no specific words are required to create a life estate, another provision of Erik's will explicitly gave Sandra a "life estate" in certain property. Specifically, the sixth article of Erik's will gave Sandra a "life estate" in real property located in Roanoke. Given Erik's use of

5

the term "life estate" in the sixth article of the will, Erik would have likely used that specific term in the fifth article of the will if he intended to give Sandra a life estate in the property at issue.

An additional term of the will also implied that Erik did not intend to give Sandra a life estate in the property. In the fifth article of the will, Erik gave Sandra the right to receive the monthly rental payments earned from a cell tower located on the property "for as long as she resides in [the] home." This provision would have been unnecessary if Erik intended to give Sandra a life estate in the property. As a life tenant, Sandra would have already been entitled to receive the rental payments. *See Livesay v. Boyd*, 164 Va. 528, 533 (1935) (explaining that a life tenant is entitled to the "entire income" generated by a property); Harrison, *supra*, § 19.14, at 19-34.

We conclude that the fifth article of Erik's will only gave Sandra a limited right to reside on the property "for so long as she is physically and mentally able to do so." It did not give Sandra a life estate in the property.

### B. PAMELA AND KIRK HAD CONCURRENT RIGHTS TO ACCESS AND USE THE PROPERTY

Sandra contends that the circuit court erred when it construed the term "reside" in a manner that allowed Pamela and Kirk to access and use the property during Sandra's residency. Sandra argues that Erik's will gave her the right to enjoy the entire property without interference from Pamela and Kirk.

Contrary to Sandra's argument, the circuit court recognized that Pamela and Kirk could not interfere with Sandra's right to reside on the property. The circuit court held that the rights of Pamela and Kirk were limited "to the extent that they interfere[d] with [Sandra's] ability to

6

live on the property by herself." The circuit court also determined that Sandra had the right to use and enjoy the entire property, not just the house in which she lived.

Erik's will did not give Sandra the exclusive right to use the property. Although Sandra had the right to reside on the property, Pamela and Kirk had concurrent property rights. Notably, Erik's will did not expressly prohibit Pamela and Kirk from accessing or using the property during Sandra's residency. As the fee simple owners of the property, Pamela and Kirk could use the property in any manner that did not interfere with Sandra's rights.

This Court addressed a similar factual scenario in *White v. White*, 183 Va. 239 (1944). In that case, a testator gave his son a life estate in his "mansion house" and farm. *White*, 183 Va. at 242. The testator also gave his wife the right to live in the house "as long she remain[ed the testator's] widow." *Id.* After the testator's son died, the testator's wife continued to live in the house with the son's family. *Id.* at 243. Pursuant to the testator's will, the son's infant child owned the house and farm in fee simple following the son's death. *Id*. at 242.

"Bickerings and quarrels" arose from the living arrangement that eventually led to litigation. *Id.* at 243. The testator's wife alleged that she had the right to the "exclusive possession" of the house. *Id.* at 244. Accordingly, she requested the trial court to order the son's family to vacate the premises. *Id.* at 244. The trial court concluded that the parties had concurrent rights to live on the property and divided the house into two apartments, assigning one apartment to the testator's wife and one apartment to the son's family. *Id.* at 246.

This Court affirmed the trial court's decision. *Id.* at 252. The Court explained that the testator's wife had the right to live on the property "free from molestation and interference" from the son's family. *Id.* The Court further clarified that the son's family owned the property "subject to" the rights of the testator's wife. *Id.* Thus, the Court warned that certain members of

7

the son's family would be removed from the property if they interfered with the rights of the testator's wife. *Id.* Nevertheless, the Court held that both the testator's wife and the son's family had the right to live on the property. *Id.* at 250.

Like the testator's wife in *White*, Sandra had the right to live on Erik's property "free from molestation and interference." *See id.* at 252. Like the son's family in *White*, Pamela and Kirk had concurrent rights to use and access the property. *See id.* at 250. Under these circumstances, the circuit court correctly concluded that the rights of Pamela and Kirk were only limited "to the extent that they interfere[d] with [Sandra's] ability to live on the property by herself."

C. PAROL EVIDENCE WAS NECESSARY TO INTERPRET THE SCOPE OF SANDRA'S RIGHTS

Sandra contends that the circuit court erred by considering parol evidence when it construed the limitation that Erik's will placed on her right to reside on the property. Specifically, Sandra argues that the circuit court erred by considering Brown's testimony to determine that Sandra's interest in the property would end "in the event she had to go into a nursing home . . . or couldn't live by herself anymore." Again, we disagree with Sandra's argument.

As previously stated, parol evidence may be considered when the language of a will is ambiguous. *See Gaymon*, 258 Va. at 230. In such cases, "[p]arol evidence is admissible to enable the court to identify the property intended to be given by will, or to assist it in determining the quantum of interest which is to pass by the will." *Parsons v. Fitchett*, 148 Va. 322, 329 (1927) (quotation omitted).

Erik's will was ambiguous in several ways. The will did not clearly define the scope of Sandra's right to reside on the property. Notably, the will failed to indicate whether Sandra had

8

the right to access and enjoy the entire property, or whether she only had the right to live in Erik's house.

The will was also ambiguous regarding the limitation that it placed on Sandra's rights. Pursuant to Erik's will, Sandra could reside on the property "for so long as she [was] physically and mentally able to do so." The will did not provide any further guidance concerning this limitation.

Brown's testimony addressed the ambiguous provisions of Erik's will. Brown explained that Erik intended to give Sandra the right to reside on the entire property for as long she was physically and mentally able to live there. Brown then testified that Erik intended for Sandra's interest in the property to end "in the event that she had to go into a nursing home" or she "couldn't live by herself anymore."

We conclude that Brown's testimony was necessary to resolve the ambiguities in the will. Brown's testimony explained Erik's intent regarding the scope of Sandra's rights and the limitation that Erik placed on those rights.

Although Sandra contends that Brown's testimony impermissibly modified the terms of Erik's will, we find that Brown's testimony and the terms of the will were essentially consistent. We note that Erik's will only gave Sandra the right to reside on the property.

Under these circumstances, we conclude that the circuit court did not err by considering Brown's testimony to determine the scope of Sandra's right to reside on the property and the limitation that the will placed on that right.

### III. CONCLUSION

For the reasons stated, we affirm the circuit court's judgment.

*Affirmed.*